# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation established pursuant to 12 U.S.C. § 1716 *et seq*, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 1:26-cv-01788 |
| | ) | |
| v. | ) | |
| | ) | |
| TALLMADGE II, LLC, a Michigan limited liability company, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR APPOINTMENT OF RECEIVER AND FOR PRELIMINARY RELIEF

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES PRESENTED................................................................ vi

MOST CONTROLLING AUTHORITY................................................................. vii

I.    INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS ...............................................................................6

    A.    Background ..............................................................................................6

    B.    The Mortgage ..........................................................................................7

    C.    Borrower's Default Of The Loan Documents.........................................9

    D.    Amount Due Lender and Lender's Right to Relief...............................13

III.  STANDARD FOR THE APPOINTMENT OF A RECEIVER....................15

IV.   ARGUMENT...................................................................................................18

    A.    A Receiver Should Be Appointed Over The Property To Preserve Plaintiff's Collateral ............................................................................18

        i.    The Loan Documents Authorize The Appointment Of A Receiver ........................................................................................18

        ii.   The Appointment Of A Receiver Is Also Expressly Authorized By Michigan Statute .............................................20

        iii.  The Appointment Of A Receiver Is Also Authorized By The Court's Equitable Powers .....................................................23

        iv.   M. Shapiro is Qualified to Act as the Receiver ........................25

    B.    An Injunction Is Necessary To Protect The Property ........................26

        i.    Plaintiff Is Likely To Succeed On The Merits..........................27

        ii.   Plaintiff Will Suffer Irreparable Harm Without An Injunction ..................................................................................27

iii.    Borrower Will Not Be Harmed By An Injunction.....................28

iv.    Issuing An Injunction Serves The Public Interest .....................28

V.    CONCLUSION.........................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n.*,
    787 F. Supp. 250 (D.D.C. 1992)..........................................................................25

*Citibank, N.A. v. Nyland Ltd.*,
    839 F.2d 93 (2d Cir. 1988) ...........................................................................19, 25

*In re DeLorean Motor Co.*,
    755 F.2d 1223 (6th Cir. 1985) .............................................................................27

*Fed. Home Loan Mortg. Corp. v. Tsinos*,
    854 F. Supp. 113 (E.D.N.Y. 1994) ....................................................................6, 25

*Fed. Nat'l Mortg. Assoc. v. Maple Creek Gardens, LLC*,
    No. 09-14703, 2010 WL 374033 (E.D. Mich. Jan. 25, 2010)......................19, 24

*Golden v. Kelsey-Hayes Co.*,
    73 F.3d 649 (6th Cir. 1996) .................................................................................26

*Meyer Jewelry Co. v. Meyer Holdings, Inc.*,
    906 F. Supp. 428 (E.D. Mich. 1995) ....................................................................23

*N.Y. Life Ins. Co. v. Watt West Inv. Corp.*,
    755 F. Supp. 287 (E.D. Cal. 1991) ................................................................20, 25

*Resolution Tr. Corp. v. Bayside Developers*,
    43 F.3d 1230 (9th Cir. 1994) ...............................................................................25

*Roghan v. Block*,
    590 F. Supp. 150 (W.D. Mich. 1984) ...................................................................27

*WBCMT 2003-C9 Island Living, LLC v. Swan Creek Limited
    Partnership*,
    No. 14-cv-14243 (E.D. Mich., Jan. 9, 2015) ......................................................19

**State Cases**

*Band v. Livonia Assocs.*,
    176 Mich. App. 95 .................................................................................................16

*Cohen v. Cohen*,
  125 Mich. App. 206 ........................................................................................20

*Livingston v. S. Sur. Co. of N.Y.*,
  262 Mich. 438 ................................................................................................16

*McDonald v. McDonald*,
  351 Mich. 568 ................................................................................................16

*Westgate v. Westgate*,
  294 Mich. 88 ..................................................................................................16

**Federal Statutes**

12 U.S.C. § 1716 ..............................................................................................1

12 U.S.C. § 4511 *et seq.* .............................................................................1, 2

12 U.S.C. § 4617(a) ........................................................................................1

12 U.S.C. § 4617(b)(2)(A)(i) .........................................................................1

12 U.S.C. § 4617(b)(2)(B)(i)-(iv) ..................................................................2

12 U.S.C. § 4617(f) .........................................................................................2

12 U.S.C. § 4617(j)(3) ....................................................................................2

42 U.S.C. §§ 300f *et seq.* ......................................................................10, 11

**State Statutes**

MCL § 554.1011 *et seq.* ...........................................................................18, 21

MCL § 554.1016 ........................................................................................18, 21

MCL § 554.1051 *et seq.* ...............................................................................16

MCL § 554.1054 ...........................................................................................17

MCL § 554.1057 ...........................................................................1, 15, 17, 22

MCL § 600.2926 ...........................................................................1, 15, 16, 20

**Rules**

Fed. R. Civ. P. 65 ...............................................................................................1

Fed. R. Civ. P. 66 ...................................................................................1, 15, 23

**Other Authorities**

Hon. Mark A. Goldsmith, *Receiverships in the Real Estate Setting*, 28
     Mich. Bus. L. J. 36.........................................................................................19

## STATEMENT OF ISSUES PRESENTED

1.     Is Fannie Mae entitled to a temporary restraining order appointing a receiver, and after notice and hearing, a preliminary injunction appointing a receiver where (a) Defendant expressly agreed in its loan documents that Plaintiff has a strict right to the appointment of a receiver in the event of default on a mortgage, (b) Defendant has defaulted on and breached the mortgage through multiple actions, and (c) the relief sought is authorized by the parties' express agreement and under the law?

Plaintiff says "Yes."

## **MOST CONTROLLING AUTHORITY**

MCL § 600.2926

MCL § 554.1011

MCL § 554.1016

MCL § 554.1057

Fed. R. Civ. P. 65

Fed. R. Civ. P. 66

## I.    INTRODUCTION

Federal National Mortgage Association ("Fannie Mae" or "Plaintiff"), a corporation established pursuant to 12 U.S.C. § 1716 *et seq.*, by its counsel, again moves this Court for the immediate entry of the order appointing receiver pursuant to Fed. R. Civ. P. 65 and 66, MCL § 554.1011 *et seq.*, MCL § 600.2926, and MCL § 554.1057, for entry of a temporary restraining order and preliminary injunction appointing a receiver to enforce the covenants under the Mortgage (as defined below) and to manage and control the manufactured home community located at 11630 14th Ave NW, Grand Rapids, Michigan 49534. Plaintiff holds a mortgage on the subject property as the mortgagee, as well as a security interest in the Personalty (as defined below) located thereon (collectively, the "Property").

Congress chartered Fannie Mae to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1716. The Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110- 289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), established the Federal Housing Finance Agency (FHFA or Conservator) as Fannie Mae's primary regulator.

On September 6, 2008, pursuant to HERA, the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator,

is statutorily empowered to "preserve and conserve Fannie Mae's assets and property," to "operate" Fannie Mae, to "perform all of Fannie Mae's functions in Fannie Mae's name," and to "collect all obligations and money due" Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f). Because the Receiver derives its authority from the Court, Section 4617(f) also precludes the Receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver on the terms set forth in the proposed Order accompanying Fannie Mae's Motion. However, FHFA reserved its rights as to any other or different terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." See 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third party that affects Fannie Mae's interest in the loan agreement, note or deed of trust, owned by Fannie Mae or under which Fannie Mae is beneficiary.

Defendant Tallmadge II, LLC ("Borrower") is the mortgagor for the Property. Borrower and/or its agent are currently in complete control of the Property. Plaintiff seeks to have this Court appoint a neutral third-party professional who is experienced in operating properties in these circumstances, to operate the Property and protect it because Borrower is currently not able to do so.

Borrower expressly agreed in the Loan Documents that Plaintiff has a strict right to the appointment of a receiver under the circumstances present here. Borrower has defaulted under the Loan Documents by failing to pay the required Monthly Debt Services Payment on June 1, 2025 and for all subsequent months.

Borrower has defaulted under the Loan Documents by, among other defaults, failing to maintain the Property in good repair and marketable condition, as required in accordance with the Loan Documents and failing to commence and diligently pursue to completion certain Required Repairs (as defined in the Loan Agreement), as required in accordance with the Loan Documents. Borrower has also failed to provide Fannie Mae and Servicer a written report as to the status of the Required Repairs and Borrower's proposed plan for prompt completion of the Required Repairs.

*Critically*, Fannie Mae has recently learned of another default causing a serious public health issue at the Property. Adeline Hambley ("Hambley") is the statutory Health Officer, in charge of the Ottawa County, Michigan Public Health

3

Department, and she has prepared an affidavit in support of Fannie Mae's Renewed

Motion for Appointment of a Receiver and for Preliminary Relief (the "Renewed

Motion"). The Hambley Affidavit is attached hereto as Exhibit 1. According to

Hambley:

> In the fall of 2025, the Ottawa County Public Health Department learned that up to 50 of the 100 homes in the Defendant, Tallmadge Meadows Manufactured Home Park ("Tallmadge Meadows" or "Company"), had lost access to potable water, which also means they cannot use their sewage disposal systems.
>
> Beyond the risks of unsafe drinking water, residents without reliable clean water cannot safely wash hands, bathe, or flush toilets. Contaminated water and poor sanitation allow the spread of bacterial and viral diseases such as typhoid, hepatitis A, and diarrheal illnesses, which are especially dangerous for infants and young children. At Tallmadge Meadows residents have described sewage backing up into their sinks, tubs, and toilets, and have resorted to using buckets and to showering off-site for months. Summer heat speeds bacterial growth and raises the chance of dehydration, but the risks are not limited to one season. The core health threat falls hardest on elderly residents, children, and people with chronic illnesses. As of June 2026, service has not been restored, so the health risk continues.
>
> *       *       *
>
> In summary, the lack of potable water and resulting inability of 50 homes to use their sewage systems presents an ongoing, imminent public health crisis at Tallmadge Meadows that warrants exigent relief by this Court to appoint a Receiver. Tallmadge Meadows appears to be expecting such a result, and such an appointment would facilitate funding that could assist in the abatement of

4

> these nuisance conditions at the Park that are risking the health and wellbeing of 50 underprivileged homeowners and their families.

(Ex. 4, at ¶¶ 4-5, 13.)

Borrower also has failed to maintain adequate insurance on the Property, causing Fannie Mae to force place insurance on April 10, 2026, retroactive to July 23, 2025.

Borrower is still in control of the Property. If a receiver is not appointed to manage the Property, Borrower will continue to dissipate the rents and income from the Property. If this happens, then Plaintiff will forever lose its ability to exercise its rights to those revenues from the Property. Moreover, Borrower has shown a complete disregard of its obligations under the Loan Documents to maintain the Property, complete all Required Repairs and to comply with the requirements of the Loan Documents, putting the Property and its residents at risk. The value of Fannie Mae's collateral will continue to be negatively impacted as well. The Loan Documents provide Plaintiff with a broad right to the assignment of rents and profits from the Property upon default. Plaintiff also has the right to a receiver in connection with Borrower's breaches of contract, including breaches of the covenants in the mortgage, in order to preserve and protect the Property. The relief requested is necessary and appropriate in this matter and is authorized under federal and Michigan law.

5

Furthermore, Borrower has been served with summons [ECF No. 9], and on June 12, 2026, Borrower's counsel communicated with undersigned counsel about the possibility of his client consenting to appointment of a receiver in this case. On June 17, 2026, undersigned counsel sent an additional email to Borrower's counsel advising him that Fannie Mae would be renewing its receiver motion and request for preliminary relief. As of the time of filing this Renewed Motion, Borrower's counsel has not responded.

Plaintiff requests that M. Shapiro Real Estate Group ("M. Shapiro") be appointed as the receiver in this case. M. Shapiro has acted as receiver for numerous distressed properties throughout the nation and in Michigan. Accordingly, Plaintiff requests the Court immediately enter the Order Appointing Receiver and Other Relief attached hereto.

## II.    STATEMENT OF FACTS[1]

### A.    Background

On or about June 30, 2022, ORIX Real Estate Capital, LLC d/b/a Lument Capital ("Lument" or "Original Lender") made a loan to Borrower in the amount of $3,995,000 (the "Loan"). The Loan is evidenced by a note and secured by a

---

[1] These facts are verified in the Verified Complaint for Enforcement of Mortgage, Including Assignment of Rents, Appointment of Receiver and Other Relief ("Verified Complaint") filed concurrently herewith. Exhibit references, unless otherwise noted, are to the exhibits attached to the Verified Complaint.

mortgage. Borrower has defaulted on the Loan, as more fully described below. The subject real estate securing the Loan is a 108-site manufactured home community in Grand Rapids, Michigan.

Importantly and especially relevant to the relief requested here, Borrower expressly consented in the mortgage to the *ex parte* appointment of a receiver by the court in the event of default. The mortgage states in relevant part as follows:

> Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and ***without the necessity of giving prior notice*** (oral or written) to Borrower, Lender may apply to any court having jurisdiction ***for the appointment of a receiver*** for the Mortgaged Property to take any or all of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at anytime after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument ***expressly consents to the appointment of such receiver***, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver.

Ex. D, § 3(e) (emphasis added).

### B.    The Mortgage

Plaintiff incorporates by reference its recitation of the Loan Documents and the definitions set forth in the Verified Complaint. Pursuant thereto, Exhibit C is the Loan Agreement; Exhibit D is the Mortgage; Exhibit E includes the County Financing Statement and State Financing Statement; and Exhibit F is the

7

Assignments to Fannie Mae. Hereinafter, the Mortgage, Note, Loan Agreement, and Assignments to Fannie Mae are referred to collectively, where appropriate, as the "Loan Documents."

To secure repayment of the indebtedness evidenced in the Note and performance of all covenants and conditions contained therein, Borrower also executed the Mortgage, which was duly recorded in the Ottawa County Register of Deeds on July 8, 2022, Document Number 2022-0024876, which granted Plaintiff a security interest in the Property, including the Mortgaged Property (as defined in the Mortgage). (Ex. D).

Borrower also assigned to Original Lender all of Borrower's right, title, and interest in and to all rents, issues, and profits that may arise or be had from the Property, and other property rights, interests, and estates as more particularly set out in the Mortgage.

The Mortgage further states:

> As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower.

Ex. D, § 3(a).

8

The Mortgage also grants a security interest in the Borrower's Personalty (as defined in the Mortgage), which includes:

> all of Borrower's present and hereafter acquired right, title and interest in all Goods, accounts, choses of action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

Ex. D, § 1.

## C.    Borrower's Default Of The Loan Documents

Borrower has defaulted under the Loan Documents by failing to pay the required Monthly Debt Services Payment on June 1, 2025 and for all subsequent months (Ex. C, § 14.01(a)(1)).

Borrower has also defaulted under the Loan Documents by, among other defaults, failing to maintain the Property in good repair and marketable condition, as required in accordance with the Loan Documents and failing to commence and diligently pursue to completion certain Required Repairs (as defined in the Loan

9

Agreement), as required in accordance with the Loan Documents. Borrower has also failed to provide Fannie Mae and Servicer a written report as to the status of the Required Repairs and Borrower's proposed plan for prompt completion of the Required Repairs (Ex. C, §§ 6.02(b)(2), (b)(3), (b)(4), 13.01(c)).

On August 26, 2025, counsel for Plaintiff sent a Notice of Default and Demand ("Notice of Default") to Borrower informing Borrower an Event of Default occurred due to, among other defaults, Borrower (i) failing to make the Required Repairs; and (ii) failing to make the required Monthly Debt Services Payment on June 1, 2025 and for all subsequent months. A copy of the Notice of Default is attached to the Complaint as Exhibit G.

Borrower has also defaulted under the Loan Documents by failing to comply with all laws, ordinances, statutes, rules and regulations regarding the Property. Fannie Mae has become aware that the Ottawa County ("County") Department of Public Health has commenced a Lawsuit against Borrower alleging that approximately half of the community's mobile homes have been without access to potable water, and seeking appointment of a receiver. A copy of the County Complaint is attached as Exhibit 2. Furthermore, Borrower received the following notices:

- September 11, 2025: The Michigan Department of the Environment Great Lakes and Energy ("EGLE") issued a Significant Deficiency Notice ("SDN") finding Borrower was not in compliance with the Safe

10

Drinking Water Act of 1976, and demanding Borrower repair the low/no water pressure problem within 120 days of the SDN.

- January 14, 2026: EGLE issued another SDN additionally finding Borrower was not in compliance with the Safe Drinking Water Act of 1976 and the Public Health Code, and demanding Borrower immediately make temporary repairs to minimize pathways of contamination relating to the on-site water wells.

- February 20, 2026: The Ottawa County Department of Public Health issued an Imminent Danger Order, finding imminent danger to the public and requiring immediate correction for alternative bathroom and shower facilities and distribution of bottled water to residents.

- March 2, 2026: The Ottawa County Department of Public Health issued another Imminent Danger Order, finding imminent danger to the public and requiring immediate correction for alternative bathroom and shower facilities and distribution of bottled water to residents.

- March 11, 2026: EGLE issued a Second Violation Notice ("SVN"), outlining multiple health and safety violations pertaining to Borrower's failure to provide potable water to residents.

On April 17, 2026, Borrower and the County entered into a Stipulation and Order summarizing certain remedial actions to be undertaken by Borrower with the remediation project to commence no later than May 15, 2026 ("Stipulation"). A copy of the Stipulation is attached hereto as Exhibit 3. To date, the remediation project has not commenced and approximately fifty percent (50%) of the mobile homes at the Property remain without potable water.

In support of the Renewed Motion, the statutory Health Officer, in charge of the Ottawa County, Michigan Public Health Department, has prepared an affidavit which summarizes the public health issue as follows:

11

In the fall of 2025, the Ottawa County Public Health Department learned that up to 50 of the 100 homes in the Defendant, Tallmadge Meadows Manufactured Home Park ("Tallmadge Meadows" or "Company"), had lost access to potable water, which also means they cannot use their sewage disposal systems.

Beyond the risks of unsafe drinking water, residents without reliable clean water cannot safely wash hands, bathe, or flush toilets. Contaminated water and poor sanitation allow the spread of bacterial and viral diseases such as typhoid, hepatitis A, and diarrheal illnesses, which are especially dangerous for infants and young children. At Tallmadge Meadows residents have described sewage backing up into their sinks, tubs, and toilets, and have resorted to using buckets and to showering off-site for months. Summer heat speeds bacterial growth and raises the chance of dehydration, but the risks are not limited to one season. The core health threat falls hardest on elderly residents, children, and people with chronic illnesses. *As of June 2026, service has not been restored, so the health risk continues.*

*   *   *

In summary, *the lack of potable water and resulting inability of 50 homes to use their sewage systems presents an ongoing, imminent public health crisis at Tallmadge Meadows that warrants exigent relief by this Court to appoint a Receiver*. Tallmadge Meadows appears to be expecting such a result, and such an appointment would facilitate funding that could assist in the abatement of these nuisance conditions at the Park that are risking the health and wellbeing of 50 underprivileged homeowners and their families.

(Ex. 4, at ¶¶ 4-5, 13 (emphasis added).)

12

Borrower also has failed to maintain adequate insurance on the Property, which constitutes an automatic Event of Default under the Loan Documents (Loan Agreement § 14.01(a)(2)). As a result, on April 10, 2026, Lender exercised its right to force place insurance, retroactive to July 23, 2025 (Loan Agreement § 9.03(a)).

On March 25, 2026, counsel for Fannie Mae sent a Notice of Intent to Force Place Insurance ("FPI Notice") to Borrower informing Borrower of its failure to maintain adequate insurance on the Property and that Lender, pursuant to Section 9.03(a) of the Loan Agreement, would force-place insurance at Borrower's cost unless Borrower provided documentation showing compliant coverage within five (5) business days. A copy of the FPI Notice is attached as Exhibit 4.

### D.    Amount Due Lender and Lender's Right to Relief

The unpaid principal balance as of January 30, 2026 is approximately $3,860,478.30 and note rate interest has accrued on said unpaid principal in the amount of $178,707.98 through January 30, 2026 and default rate interest has accrued on said unpaid principal in the amount of $68,220.15 through January 30, 2026. The total amount due as principal and interest, along with reserves, late fees, and other charges, as of January 30, 2026 is $4,532,636.71, subject to any setoffs for reserve funds. In addition, Borrower is liable for attorneys' fees and costs.

Pursuant to the Mortgage, Borrower's license to collect rents terminated upon an Event of Default. The Mortgage states in relevant part:

13

> If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, ***the revocable license granted to Borrower pursuant to Section 3(b) shall automatically terminate***, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid.

Ex. D, § 3(c) (emphasis added).

It is dispositive here that Borrower expressly consented in the Mortgage to the appointment of a receiver upon an Event of Default, which is defined in the Loan Agreement to include "any failure by Borrower to pay or deposit when due any amount required by the Note, [the] Loan Agreement or any other Loan Document" (Ex. C, § 14.01(a)(1)), and "the existence of such condition or event, or such failure to perform or default in performance for a period of thirty (30) days after written notice by Lender to Borrower of the existence of such condition or event." (Ex. C, § 14.01(c)).

As detailed above, the Note and Mortgage are in default. Plaintiff has been damaged and is entitled to the appointment of a receiver in order to preserve and protect the Property. Borrower continues to control the Property but has failed to pay all amounts due under the Loan Documents, failed to comply with its obligations

14

under the Loan Documents and failed to maintain the Property, despite receiving rental income. Plaintiff is justifiably concerned regarding the condition of the Property in light of Borrower's failure to pay all amounts due, failure to maintain the Property, and failure to complete the Required Repairs. Even more critically, approximately half the homes at the Property do not have potable water and Borrower has been sued by the County over this issue.

The forgoing demonstrates that Plaintiff's interest in the collateral continues to be diminished and requires the immediate appointment of a receiver to protect Plaintiff's mortgagee interests. Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and efficiently enforce the Mortgage.

## III.    STANDARD FOR THE APPOINTMENT OF A RECEIVER

This Court is authorized to appoint a receiver as requested by Plaintiff to enforce the covenants under the parties' Loan Documents, as well as pursuant to MCL § 600.2926, MCL § 554.1057, and MCL § 554.1016. Borrower has also consented to the appointment of a receiver for the Property.

Fed. R. Civ. P. 66 provides, in relevant part, that: "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued." MCL § 600.2926 provides, in relevant part, that, "[j]udges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is

15

allowed by law." *See* MCL § 600.2926. Michigan courts have interpreted this statute to mean that appointment of a receiver is not limited to cases where appointment is expressly provided by statute (although express statutory support for a receiver does exist in this case, as described below), but also includes those cases where the facts and circumstances make appointment of a receiver an appropriate exercise of the court's equitable jurisdiction. *Band v. Livonia Assocs.*, 176 Mich. App. 95, 104; 439 N.W.2d 285 (1989); *see also*, *McDonald v. McDonald*, 351 Mich. 568, 575; 88 N.W.2d 398 (1958) (a court of equity has an inherent right to appoint a receiver in a proper case to implement and enforce its decrees and orders). Such appointment may be made on an *ex parte* basis. *Livingston v. S. Sur. Co. of N.Y.*, 262 Mich. 438; 247 N.W. 712, 713 (1933). Under Michigan law, a receiver may be appointed where necessary to receive and preserve the property of parties to litigation and, in some cases, to control and manage it for the persons or parties who may ultimately be entitled thereto. *Westgate v. Westgate*, 294 Mich. 88, 91; 292 N.W. 569 (1940).

Michigan's Uniform Assignment of Rents Act, MCL § 554.1051, *et seq.* ("<u>MUARA</u>"), expressly authorizes the appointment of a receiver in such cases where there exists an assignment of rents and profits in mortgaged properties. MUARA expressly provides that an assignment of rents "creates a presently effective security interest in all accrued and unaccrued rents arising from the real property…[and] [t]he security interest in rents is separate and distinct from any security interest held by

16

the assignee in the real property." MCL § 554.1054. MUARA provides, in relevant part, that, in connection with any assignment of rents the mortgagee:

> An assignee is ***entitled to*** the appointment of a receiver for the real property subject to the assignment of rents if either of the following applies:
>
> (a) The assignor is in default and any of the following apply:
>
>> (i) The assignor has agreed in a signed document to the appointment of a receiver in the event of the assignor's default.
>>
>> (ii) It appears likely that the real property and any other collateral granted by the assignor to the assignee may not be sufficient to satisfy the secured obligation.
>>
>> (iii) The assignor has failed to turn over to the assignee proceeds that the assignee was entitled to collect under this act.

MCL § 554.1057 (emphasis added). Plaintiff is entitled to the appointment of a receiver under MUARA because, among other reasons, Borrower is in default and (i) Borrower agreed in the Loan Documents to the *ex parte* appointment of a receiver, and (ii) Borrower failed to turn over all proceeds to Plaintiff as required under the Mortgage despite Plaintiff's demand.

Michigan also has adopted the Michigan Receivership Act (MCL § 554.1011 *et seq.*) which authorizes the appointment of a receiver in the instant case. Specifically, the Michigan Receivership Act states a court may appoint a receiver

17

over commercial property in connection with the enforcement of a mortgage if "appointment is necessary to protect the property from waste, loss, transfer, dissipation, or impairment" or "the mortgagor agreed in a signed record to appointment of a receiver on default." *See* MCL § 554.1016. Both factors are satisfied here.

Accordingly, there is sufficient authority for the relief Plaintiff seeks in the instant motion.

## IV.    ARGUMENT

### A.    A Receiver Should Be Appointed Over The Property To Preserve Plaintiff's Collateral

#### i.    The Loan Documents Authorize The Appointment Of A Receiver

Upon an event of default, the Mortgage and Loan Documents provide Plaintiff with numerous non-exclusive remedies to protect its interest in the Property. Plaintiff may, among other things, apply for the appointment of a receiver (without notice and without regard to Borrower's solvency), and/or enforce Plaintiff's interest in the leases and rents from the Property.

Under the Mortgage, Borrower expressly agreed that Plaintiff has a <u>strict right</u> to the appointment of a receiver upon an Event of Default. (<u>Ex. D</u>, § 3(e)). As demonstrated above, Borrower is clearly in default of the Note and Mortgage and putting Plaintiff's collateral in jeopardy.

18

When deciding a motion to appoint a receiver filed in another matter, this Court held that a borrower's agreement to the appointment of a receiver "is sufficient to conclude that a mortgage holder is entitled to such an appointment ...." *Fed. Nat'l Mortg. Assoc. v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 WL 374033, at *3 (E.D. Mich. Jan. 25, 2010) (attached hereto as Exhibit 5).[2] Similarly, this Court in *WBCMT 2003-C9 Island Living, LLC v. Swan Creek Limited Partnership*, No. 14-cv-14243 (E.D. Mich., Jan. 9, 2015), appointed a receiver where the loan documents unambiguously granted mortgagee such relief "as a matter of strict right." There, the court also stated that assuming advance consent to the appointment of a receiver is dispositive to the issue of appointment, a mortgagee is "plainly entitled to such relief." *Id.* Here as well, Borrower agreed, in the Mortgage, that Plaintiff has a strict right to the appointment of a receiver upon an event of default.

Other courts have not hesitated to appoint receivers to protect a mortgagee's interest in real estate and the income therefrom where the parties have agreed to the appointment of a receiver should certain conditions arise. *See Citibank, N.A. v. Nyland Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) ("It is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes

---

[2] *See also*, Hon. Mark A. Goldsmith, *Receiverships in the Real Estate Setting*, 28 Mich. Bus. L. J. 36 at pg. 38 (Summer 2008) (stating under Michigan law where assignment of rents is invoked the appointment of a receiver is appropriate) (attached hereto as Exhibit 6).

such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default."); *N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) ("The deed of trust specifically provides for the appointment of a temporary receiver in circumstances such as now exist. There is little hardship in enforcing the terms of the parties' bargain.").

Accordingly, based solely and expressly on the contractual provisions which authorize the appointment of a receiver and assignment of rents in favor of Plaintiff, this Court should appoint a receiver without delay.

### ii.    The Appointment Of A Receiver Is Also Expressly Authorized By Michigan Statute

Michigan law expressly permits the appointment of a receiver. Michigan courts have recognized the need for the appointment of receivers to protect property. Judges "in the exercise of their equitable powers, may appoint receivers in all pending cases where appointment is allowed by law." MCL § 600.2926. "The primary purpose of a receiver is to preserve property" and to "dispose of it under the order of the court." *See Cohen v. Cohen*, 125 Mich. App. 206, 214; 335 N.W.2d 661, 665 (1983).

Furthermore, the Michigan Receivership Act expressly grants Michigan courts the authority to appoint a receiver when necessary to protect the property from waste and loss and when the mortgagor has agreed in a signed record to the

20

appointment of a receiver. MCL § 554.1016. Here, both criteria are met. Borrower has failed to maintain the Property and failed to comply with all laws, statutes, ordinances, rules, and regulations related to the Property, which has caused waste and loss. Borrower has also agreed in the Mortgage to the appointment of a receiver. Therefore, this Court is authorized to appoint a receiver pursuant to the Michigan Receivership Act.

In addition, where (as here) a mortgage provides for an assignment of rents, Michigan law provides for the appointment of a receiver to take possession of the property, and collect rents. Specifically:

> (1) An assignee *is entitled* to the appointment of a receiver for the real property subject to the assignment of rents if either of the following applies:
>
>> (a) The assignor is in default and any of the following apply:
>>
>>> (i) The assignor has agreed in a signed document to the appointment of a receiver in the event of the assignor's default.
>>>
>>> (ii) It appears likely that the real property and any other collateral granted by the assignor to the assignee may not be sufficient to satisfy the secured obligation.
>>>
>>> (iii) The assignor has failed to turn over to the assignee proceeds that the assignee was entitled to collect under this act.
>
> * * *

21

(5) From the date of its appointment, a receiver is entitled to collect rents as provided in section 6(2). The receiver also has the authority provided in the order of appointment and law of this state other than this act.

MCL § 554.1057 (emphasis added). This provision specifically permits courts to appoint receivers to collect rents from mortgaged properties. This statute is particularly important in this context where there are allegations of failure to maintain the Property and comply with all laws, statutes, and ordinances related to the Property.

Accordingly, based on the Michigan statutes which authorize the appointment of a receiver in the circumstances present here, this Court should appoint a receiver without delay.[3] Plaintiff is entitled to the appointment of a receiver to collect income derived from the Property, and use such to preserve and maintain its collateral. Rents and profits are necessary to ensure that the Property is maintained and protected —

---

[3] [3] Courts in Michigan have routinely approved the appointment of Receivers in similar matters. *See, e.g., Federal National Mortgage Association v. Milan Pines Apartments, LLC,* filed in the United States District Court for the Eastern District of Michigan, Case No. 26-cv-11723, *Order Appointing Receiver and Other Relief*, May 28, 2026 [Dkt. No. 6]*; Federal National Mortgage Association v. East Jefferson, LLC*, filed in the United States District Court for the Eastern District of Michigan, Case No. 26-cv-11274, *Order Appointing Receiver and Other Relief*, April 24, 2026 [Dkt. No. 9]; *Federal National Mortgage Association v. Rosehaven Manor Apts., LLC*, filed in the 7th Judicial Circuit Court for Genesee County, Case No. 25-50658-CB, *Order Appointing Receiver and Other Relief*, entered on Mar. 10, 2025; *Federal National Mortgage Association v. Sycamore Meadows Apartments, Ltd.*, filed in the 22nd Judicial Circuit Court for Washtenaw County, Case No. 25-000206-CB, *Order Appointing Receiver and Other Relief*, entered March 5, 2025.

22

something that is not occurring. It would be inequitable to allow Borrower to collect and divert the income from the Property in further breach of its obligations.

### iii. The Appointment Of A Receiver Is Also Authorized By The Court's Equitable Powers

This case presents the strongest basis for the appointment of a receiver, as described above. However, even in cases not involving assignment of rents and profits, or where the parties have not contracted for the appointment of a receiver, this Court has the authority to appoint a receiver pursuant to Fed. R. Civ. P. 66. In *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428 (E.D. Mich. 1995), a Michigan federal court adopted a six factor test for the appointment of a receiver:

> [F]actors typically influencing the district court's exercise of discretion include: (i) the existence of a valid claim by the moving party; (ii) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (iii) imminent danger that property will be lost, concealed, or diminished in value; (iv) inadequacy of legal remedies; (v) lack of a less drastic equitable remedy; and (vi) the likelihood that appointment of a receiver will do more harm than good.

*Id*. at 432 (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F. 2d 314, 316-17 (8th Cir. 1993)).

The appointment is an appropriate remedy for each of these reasons. ***First***, Plaintiff has a valid claim (the Mortgage provides for the appointment of a receiver upon default) and very valuable interests in the Property and the income generated by the Property. Such interests require protection. ***Second***, Borrower's defaults under the Loan Documents are substantial, including failing to pay all amounts due and failing to maintain the Property. ***Third***, Borrower's defaults demonstrate an

23

inability or refusal to properly account for and apply revenues of the Property and to properly maintain the Property. *Fourth*, the Property is a 108-site manufactured home community. Given Borrower's defaults, including the serious water issue impacting half of the homes, Plaintiff is justifiably concerned that the Property is not being adequately managed and maintained by Borrower for the tenants. *Fifth*, the appointment of a receiver is the only appropriate equitable remedy and is a remedy to which Borrower has already consented. *Sixth*, there is no risk that the appointment of a receiver will do more harm than good. Plaintiff holds a superior interest in the title to the Property and a receiver would not interfere in any way with any party's legal rights. There is little hardship here in enforcing the terms of the parties' bargain. *Maple Creek Gardens, LLC*, *supra* at *3. A receiver in this context will stabilize the Property and ensure that it is effectively managed and operated, which inures to the benefit of all parties.

Federal courts contemplating the appointment of a receiver have considered a number of factors, but have found the adequacy of the security and the financial position of the mortgagor to be most important. *See N.Y. Life*, 755 F. Supp. at 292. Thus, receivers are commonly appointed in situations involving a secured creditor with an interest in real property and when the creditor needs assistance collecting rent from and otherwise protecting mortgaged properties from waste and neglect. *See Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1242 (9th Cir. 1994)

24

(receiver properly appointed where secured creditor sought receiver to "conserve and manage" property); *Citibank*, 839 F.2d at 97-98; *Fed. Home Loan Mortg. Corp. v. Tsinos*, 854 F. Supp. 113, 116 (E.D.N.Y. 1994). Many federal district courts have held that "[c]reditors in real propert[ies] have a well-established interest in the propert[ies] sufficient to support the appointment of a receiver." *Brill & Harrington Invs. v. Vernon Sav. & Loan Ass'n.*, 787 F. Supp. 250, 253-54 (D.D.C. 1992). *See also N.Y. Life*, 755 F. Supp. at 292-93.

Borrower has defaulted on its obligations under the terms of the Loan in numerous ways as detailed above. Given these breaches of the Loan Documents, the equities clearly favor appointment of a receiver.

### iv. M. Shapiro is Qualified to Act as the Receiver

M. Shapiro is qualified to act as the receiver in this case. M. Shapiro has acted as a receiver for numerous distressed properties throughout the nation, including many in Michigan. Therefore, M. Shapiro is uniquely qualified to handle a case involving the issues presented here. For the Court's convenience, information about M. Shapiro is attached hereto as Exhibit 7.[4] M. Shapiro has significant experience

---

[4] The Receiver shall receive as reasonable compensation as follows: (i) a monthly management fee equal to the greater of 5% of the gross revenues collected per month or $3,750 per month; (ii) a set-up fee equal to the first full month's management fee; (iii) a sales/leasing commission of $1,000 per transaction for each community manufactured home that is currently located on the Property that is either rented or sold to a third party and thereafter occupied, and each manufactured home

serving as a receiver in Michigan.[5]

### B.    An Injunction Is Necessary To Protect The Property

The Sixth Circuit has identified four factors for courts to consider in deciding whether to issue a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) the balance of the hardships to the defendant and the plaintiff; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 649 (6th Cir. 1996). None of these four factors are "prerequisites that must be met," but are considerations for the trial court to balance. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Here, each factor weighs heavily in Plaintiff's favor and the Court should enter a preliminary injunction.

---

unit that is not currently located on the Property that is hereafter relocated onto the Property and thereafter occupied; (iv) travel expenses shall be billed with a direct pass through (no markup); (v) an hourly rate for the Receiver of $125 - 295 per hour for receivership specific activities (court filings, reports, and hearings, etc.); (vi) a construction coordination fee of 6% of all Lender approved capital construction costs totaling $25,000 on a per project basis; and (vii) a transition fee equal to one full month's management fees upon the sale or termination of the Receivership.

[5] [5] Notably, this Court has already appointed M. Shapiro as Receiver under Temporary Restraining Orders for two other mobile home communities owned by the same parties as Borrower. *See Fannie Mae v. Crystal Downs MHC-Michigan, LLC*, Case No. 26-cv-01584 [Dkt. No. 9] and *Fannie Mae v. Twin Pines MHC – Michigan, LLC*, Case No. 26-cv-01585 [Dkt. No. 9].

26

### i.        Plaintiff Is Likely To Succeed On The Merits

Borrower has demonstrated an unwillingness and/or inability to meet its obligations under the Loan Documents. As demonstrated above, and in Plaintiff's Verified Complaint, Borrower is clearly in default of the Loan Documents. Accordingly, Plaintiff is likely to succeed on the merits of its claims in this case.

### ii.       Plaintiff Will Suffer Irreparable Harm Without An Injunction

Plaintiff will suffer immediate and irreparable injury to its interests in the Property and the income generated therefrom without the entry of a preliminary injunction. As stated above, Borrower continues to control the Property but has failed to pay all amounts due under the Loan Documents, failed to maintain the Property, and failed to make all necessary repairs and replacements.

Moreover, injunctive relief is necessary to prevent damage and waste to the Property, and to protect the public. "[S]ince land is considered to be unique, its loss or threatened loss is considered to be irreparable injury." *Roghan v. Block*, 590 F. Supp. 150, 152 (W.D. Mich. 1984). An injunction is necessary to prevent Borrower from diverting or spending revenue from the Property and dissipating the value of Plaintiff's collateral. Accordingly, because the Property is unique and the threatened harm to the Property is imminent, injunctive relief should be granted.

27

### iii.    Borrower Will Not Be Harmed By An Injunction

Granting an injunction will not cause any harm to Borrower. Due to its indisputable defaults, Borrower no longer has the right to manage the Property, and the receiver will protect the interests of all parties with an interest in or who are affected by the Property. Moreover, Borrower's license to receive and apply income from the Property automatically ended upon its default.

### iv.    Issuing An Injunction Serves The Public Interest

The public interest is served by compelling parties to honor their agreements and by avoiding harm or waste to commercial property. There is no public interest served in allowing Borrower to default and further avoid its contractual obligations. Furthermore, the interests of the tenants of the Property will be served by an injunction to appoint a receiver experienced in the management of distressed properties, including to ensure the water issue at the Property is adequately addressed.

## V.    CONCLUSION

Plaintiff respectfully requests that this Court immediately enter the Order Appointing Receiver and Other Relief attached hereto as Exhibit 8, which provides for the appointment of M. Shapiro Real Estate Group as receiver, with all of the powers and duties prescribed by law and the Order and protecting Plaintiff's interest in the Property and income therefrom from dissipation by Defendant.

Dated: June 18, 2026

Respectfully submitted,

/s/ *Ann Marie Uetz*
Ann Marie Uetz (P48922)
Tamar N. Dolcourt (P73425)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
auetz@foley.com
tdolcourt@foley.com

-and-

Jill Nicholson
Shannon Shin
DENTONS US LLP
233 S. Wacker Dr., #5900
Chicago, IL 60606
(312) 876-8000
jill.nicholson@dentons.com
shannon.shin@dentons.com

*Attorneys for Plaintiff*

29