# **EXHIBIT 2**

STATE OF MICHIGAN
20th CIRCUIT COURT

---

OTTAWA COUNTY DEPARTMENT
OF PUBLIC HEALTH,

Plaintiff,

v

TALLMADGE MEADOWS MHC, LLC,

Defendant.

Case No. **2026-0000008748-CB**
Honorable **JUDGE JON A. VAN ALLSBURG**

**VERFIED COMPLAINT FOR EX-
PARTE AND INJUNCTIVE RELIEF**

---

Douglas W. Van Essen (P33169)
LEGACY LITIGATION GROUP.
Attorneys for Plaintiff
300 Ottawa Avenue, NW, Suite 620
Grand Rapids, MI 49503
(616) 340-7090
doug@legacygrandrapids.com

---

Plaintiff, the Ottawa County Department of Public Health ("Public Health"), by and through its attorneys, Legacy Litigation Group, PLLC, states its Verified Complaint against Defendant, Tallmadge Meadows MHC, LLC ("Tallmadge Meadows"), state as follows:

## JURISDICTION AND VENUE

1. The underlying failures of the Defendant arise and continue to arise in Ottawa County, the amount in dispute exceeds $25,000 and equitable relief is sought.

2. This Court has jurisdiction over this action under MCL §600.1605.

3. Since the Defendant operates in Ottawa County, venue is proper in this Court pursuant to MCL §§600.1605

## PARTIES

4. Public Health is the local public health department of Ottawa County operating under the Public Health Code in Michigan, being Public Act 368 of 1978, MCL 333.1101 et seq.

5. The principal place of business of Tallmadge Meadows is the mobile home park that it owns and operates at 011630 14th Avenue, Grand Rapids, MI 49544, which is located in Tallmadge Township, within Ottawa County, Michigan.

## FACTS

6. Tallmadge Meadows houses approximately 100 mobile homes on a community wide well and water distribution system and septic sewage disposal system, each owned and operated by Tallmadge Meadows.

7. Most of the homes in Tallmadge Meadows are owned by the residents who own their own mobile homes and lease the house slab and water and sewage systems from the Company, although some homes are owned by the Company, which leases them to the occupants.

8. Nearly all of the residents of Tallmadge Meadows could be classified as low- or fixed-income households with no viable alternative housing options.

9. In August of 2025, half of the homes in Tallmadge Meadows experienced low or no water pressure in their homes ("West Loop").

10. On September 11, 2025, the Michigan Department of the Environment Great Lakes and Energy ("EGLE") sent the park a Significant Deficiency Violation Notice (SDVN) for low pressure. EGLE gave Tallmadge Meadows 120 days (until January 8, 2026) to resolve the issue or enter into an administrative compliance agreement with EGLE. See **Exhibit A.**

11. On October 2, 2025, EGLE held a 30-day consultation with Tallmadge Meadows on the issue and corrections that would be needed

12. On October 31, 2025, Tallmadge Meadows submitted a draft proposal to EGLE that included excavating a section of pipe, testing for iron related bacteria, and rehabilitating the current distribution system with flushing and shock chlorination.

2

13.    EGLE determined the proposal was insufficient because it did not have the requisite full engineering study to ensure the distribution system is sufficiently designed to provide the required minimum pressure to all users and to resolve water quality issues as requested by EGLE in the violation notice.

14.    Tallmadge Meadows did not retain a professional engineering firm to meet EGLE's requirements for an adequate abatement plan and it became apparent that Tallmadge Meadows would not address the water problems in the West Loop.

15.    On December 15, 2025, EGLE met with Tallmadge Meadows to discuss measures that would be included in the administrative compliance agreement to address sanitary concerns of residents that are unable to bath or do laundry.

16.    The next day, on December 16, 2025, Tallmadge Meadows had to issue a boil water advisory to the other 50 homes in the Park ("East Loop") because of a break in a water main.

17.    While the main was repaired and pressure was restored to the East Loop of the park, the West Loop continued to have low pressure. The boil water advisory remains in The East Loop because of back flow concerns due to the low pressure in the West Loop.

18.    On January 6, 2026, EGLE was on-site for a follow-up site visit and pressure testing. The East Loop generally had acceptable pressures, ~50 psi, although one home did have low pressure. The West Loop had very low pressures, with the south side of the Loop having multiple pressure readings of 0 psi at homes, and the north side of the Loop having pressure readings of 20 psi or less.

19.    As of January 8, 2026, the Park had neither resolved the low-pressure issue nor entered into an administrative compliance agreement with EGLE

3

20.     Accordingly, on January 14, 2026, EGLE issued a Treatment Technique Violation Notice for not resolving the violation from September 11, 2025, or entering into an administrative compliance agreement with EGLE.  See **Exhibit B.**

21.     On February 2, 2026, EGLE and Tallmadge Meadows entered into an administrative compliance agreement ("ACA"), wherein the latter pledged to conduct flushing of the impacted water lines and then develop an engineering plan to remediate the pressure issue long term.  See **Exhibit C.**

22.     Meanwhile, Tallmadge Meadows was only making potable water available to residents of the West Loop upon their request and no provisions were being made for the toilet and shower needs of the residents.

23.     Accordingly, on February 20, 2026, Public Health issued an Imminent Danger Order under MCL §§333.2448, MCL §333.2433, and MCL §333.2451 of the Public Health Code finding imminent danger to the public and requiring immediate correction for alternative bathroom and shower facilities and distribution of bottled water to all residents by the Park.  See **Exhibit D.**

24.     In early March 2, 2026, Public Health updated the Order recognizing that Tallmadge Meadows had opened some unused mobile homes for toilet and shower use, but finding that such a measure was inadequate and requiring portable toilet and shower units to be installed and finding that the Park had to deliver and keep stocked five gallon water containers with spigots to each residence.  See **Exhibit E.**

25.     On March 11, 2026, EGLE issued a violation, noting that Tallmadge Meadows had missed the deadline in the ACA.  See **Exhibit F.**

26.     As of the date of this Complaint, Tallmadge Meadows had not provided the toilets and showers; thereby failing to meet the deadline set in the March 2, 2026, Imminent Danger

4

Health Order, and had failed to meet the deadline in the ACA for flush test, claiming it lacked sufficient funds, much less ascertain or fix the potable water delivery failures.

## COUNT I: EX-PARTE SHOW CAUSE ORDER; INJUNCTIVE ORDER OR APPOINTMENT OF RECEIVER

27.    Public Health incorporates by reference and realleges its allegations in Paragraphs 1 through 26 as if fully set forth herein.

28.    In speaking with Tallmadge Meadows' residents, Public Health has learned how much they are paying to rent only the pad and utilities and/or rent the mobile homes in which they are located.  With this information, Public Health estimates that Tallmadge Meadows is receiving in excess of $70,000 per month from residents, meaning it has received over $500,000 in rent since this water crisis surface.

29.    Despite this revenue, Tallmadge Meadows has not retained professionals necessary to ascertain the cause of the potable water delivery issues, much less then fix them.

30.    MCR 2.622 permits the appointment of a receiver upon a showing of "good cause."

31.    MCL §600.2926 grants circuit courts broad equitable powers to "appoint receivers in all cases pending where appointment is allowed by law.

32.    Michigan courts recognize corporate mismanagement and misapplication of funds as sufficient grounds for the appointment of a receiver.  See *In re Farber*, 260 Mich 652 (1932).

33.    Waste and neglect are also grounds recognized as justifying the appointment of a receiver.  See *Shouneyia v. Shouneyia*, 291 Mich App 318 (2011).

34.    Appointment of a receiver is a last or latter remedy where other approaches have failed.  See *Ypsilanti Fire Marshall v. Kircher*, 273 Mich App 496 (2007).

35. Failing to provide potable water to half of the mobile home park for six months and failure to honor EGLE consent orders and Public Health's emergency public health orders demonstrate waste and mismanagement and justify extraordinary remedies.

36. Given the imminent need for toilet and shower facilities and the urgent need to remedy the lack of potable water for a 100 homes serving over 200 residents justifies an ex-parte order to Defendants compelling it to appear and show cause at a hearing set by the Court as to why it has violated the EGLE ACA and the Public Health Orders, and if it cannot demonstrate a reasonable date for compliance, for the appointment of a receiver to address these urgent business needs with the revenue being generated by the mobile home park.

. **WHEREFORE**, Public Health respectfully requests that this Court enter a grant it the following relief:

A. Set a hearing and an issue an ex-parte order compelling the Defendant to demonstrate a legitimate reason for failing to comply with EGLE's ACA and Public Health's Health Orders and a reasonable timeframe for achieving compliance and for rectifying the potable water issues at the mobile home park, as well as providing adequate interim toilets, showers, and potable water provisions.

B. Alternatively, if the Court is not satisfied that the Defendant is capable of compliance without further waste and compromise of public health, appoint a receiver under MCR 2.622 and MCL §600.2926 if the Court does not find the Defendant's plans or assurances acceptable.

C. Afford Public Health such additional relief as might be deemed acceptable.

## VERIFICATION

State of Michigan     )
                          ) ss
County of Ottawa     )

I, Adeline Hambley, being first duly sworn, hereby verify that I am the Health Officer for the Plaintiff and am generally familiar with the facts above and can attest to their accuracy to the best of my knowledge, information and belief.

_Adeline Hambley_
Adeline Hambley

Subscribed and sworn to before me an ~~Ottawa~~ *Moskega* County notary public, acting in Ottawa County, Michigan, on March 24, 2026

My Commission expires on 6/20/86

LEGACY LITIGATION GROUP, PLLC
Attorneys for Plaintiff

Date: March 24, 2026

By: _____
       Douglas W. Van Essen (P33169)

BUSINESS ADDRESS AND TELEPHONE:
       300 Ottawa Avenue, NW, Suite 620
       Grand Rapids, MI 49503
       (616) 340-7090
       doug@legacygrandrapids.com

# EXHIBIT A



GRETCHEN WHITMER
GOVERNOR

STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY

DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

**EGLE**

PHILLIP D. ROOS
DIRECTOR

September 11, 2025

VIA EMAIL AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Ara Darakjian                                   SIGNIFICANT DEFICIENCY NOTICE
Tallmadge Meadows                               WSSN:  40426
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

Dear Ara Darakjian:

SUBJECT:  Significant Deficiency Notice – Capacity of the Distribution System
                 Tallmadge Meadows – WSSN: 40426

The Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division (DWEHD), records show that Tallmadge Meadows is not in compliance with the Safe Drinking Water Act 1976 PA 399, as amended (Act 399).

Significant deficiencies represent an immediate health risk to consumers of water and indicate noncompliance with Act 399 and the promulgated rules. Significant deficiencies are serious sanitary deficiencies identified in water systems which include, but are not limited to, defects in design, operation, maintenance, or a failure or malfunction of the sources; treatment, storage, or distribution systems that are determined to be causing, or have the potential to cause, contamination into the public water supply.

Significant deficiencies must be corrected, or the water supply must have an EGLE-approved corrective action plan, within 120 days of the date of this letter, or earlier if specified by EGLE. Failure to meet the deadline is a treatment technique violation with public notice requirements.

In accordance with Act 399 and the administrative rules, Tallmadge Meadows is not in compliance with 325.1015, Section 15, *Protection of public health; notice to supplier of water; inspection of waterworks system; order; public hearing; emergency order; action limiting water system expansion or water use,* and R 325.11105, *Capacity of distribution system; fire hydrants; inadequately sized watermains.*

- 325.1015 Section 15. (1) When considered necessary for protection of public health, the department shall notify a supplier of water of the need to make changes in operations, to provide treatment, to make structural changes in existing systems, or to add additional capacity as necessary to produce and distribute and adequate quantity of water meeting the state drinking water standards.
- R 325.11105 (1) Distribution systems shall have sufficient capacity to meet peak demands, including fire flow demands where fire protection is provided, while

Ara Darakjian:
Page 2
September 23, 2025

> continuously maintaining a minimum of 35 psi throughout the distribution system
> under normal operating conditions and 20 psi throughout the distribution system
> during emergencies such as firefighting.

On July 16, 2025, EGLE responded to a complaint of low pressure and black water at
1344 S. White. The water pressure reduced to zero at 1344 S. White when the flushing
hydrant next to the home was turned on. Pictures were taken showing zero pressure
inside the home. This is an indication of inadequately sized mains. The inside of the
pipes are most likely built up with iron and calcium carbonate reducing the effective size
of the watermains.

A pressure recorder was placed at 1344 S. White between July 23 and July 31, 2025.
Under normal use conditions for this week, the pressure dropped below 35 psi daily,
below 20 psi on at least three separate occasions and lost pressure completely at least
once during the week it was monitored. No boil water alert or bacteriological samples
were received by EGLE in response to this loss of pressure in the distribution system.
Another neighbor on S. White complained of low pressure. Overall, the community is
unable to provide sufficient pressure during normal operations and is unable to perform
routine flushing of the system without causing pressure losses. Flushing of the system
is routine maintenance and should occur regularly.

Additionally, the iron, dirt and debris that accumulates at 1344 S. White is objectionable.
In October 2022 and July 2024, black water was filmed in a video coming out of the
outside spigot of 1344 S. White. A filter was installed by the management for the
resident but plugs up frequently because this is not a permanent solution. The debris
coming from the distribution piping will ruin hot water heaters and other appliances in
the home.

Because of this ongoing capacity issue in the distribution system, EGLE is requiring a
full engineering study to ensure the system is sufficiently designed and to ensure
required minimum pressure to all users and resolve water quality issues.

Our investigation is considered complete. This significant deficiency begins as of the
date of this letter and will continue until Tallmadge Meadows completes corrective
action within 120 days of the date of this letter or be in a compliance agreement (in the
form of an Administrative Consent Order) that includes a binding corrective action plan
and schedule. Provide EGLE with a corrective action plan and schedule, in writing,
within 30 days of the date of this letter.

If you have any factual information you would like us to consider regarding the
significant deficiency identified in this Significant Deficiency Notice please provide it in a
written response by October 11, 2025.

Ara Darakjian:
Page 3
September 23, 2025

Please note that any Significant Deficiency (SD) that remains unresolved at the time the annual Consumer Confidence Report (CCR) is distributed, the water supplier is required to provide a Special Notice in its CCR. The water supplier must inform your customers on the details regarding the unresolved SD including the date the SD was identified by EGLE; the EGLE approved plan and schedule for correction along with the current progress toward this approved plan. This Special Notice requirement shall be included in all future CCRs until the SD has been resolved.

We anticipate and appreciate your cooperation in resolving this matter. If you have any questions regarding this Significant Deficiency Notice, please contact Brian Esparsa at esparsab@michigan.gov or 616-307-0006.

Sincerely,

Brian Esparsa
2025.09.11 14:11:29 -04'00'

Brian Esparsa
Grand Rapids District Office
Drinking Water and Environmental Health
Division

Enclosure
cc: Katelyn Reyes, EGLE (for all Manufactured Housing Communities)
    Amy Vail Field Operations Section Manager, EGLE
    Matt Allen, EGLE
    Alicia Hawkins, EGLE
    Kent County Health Department
    DLARA



7-23-25
Tallmadge
Meadows
Begin 1:45 PM
Lot/Address 1344
N. White

7-31-25
End 12:30 PM



# EXHIBIT B



STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

**EGLE**

GRETCHEN WHITMER
GOVERNOR

PHILLIP D. ROOS
DIRECTOR

January 14, 2026

VIA EMAIL AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Ara Darakjian
Tallmadge Meadows
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

SIGNIFICANT DEFICIENCY NOTICE
WSSN: 40426

Dear Ara Darakjian:

SUBJECT: Significant Deficiency Notice – Source Water Protection & Wellhead Condition
Tallmadge Meadows – WSSN: 40426

The Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division (DWEHD), records show that Tallmadge Meadows is not in compliance with the Safe Drinking Water Act 1976 PA 399, as amended (Act 399), and the administrative rules promulgated thereunder and, the Public Health Code 1978 PA 368, as amended (Act 368), and the administrative rules promulgated thereunder.

Significant deficiencies represent an immediate health risk to consumers of water and indicate noncompliance with Act 399 and the promulgated rules. Significant deficiencies are serious sanitary deficiencies identified in water systems which include, but are not limited to, defects in design, operation, maintenance, or a failure or malfunction of the sources; treatment, storage, or distribution systems that are determined to be causing, or have the potential to cause, contamination into the public water supply.

Significant deficiencies must be corrected, or the water supply must have an EGLE-approved corrective action plan, within 120 days of the date of this letter, or earlier if specified by EGLE. Failure to meet the deadline is a treatment technique violation with public notice requirements.

In accordance with Act 399 and the administrative rules, Tallmadge Meadows is not in compliance with 325.1015, Section 15, *Protection of public health; notice to supplier of water; inspection of waterworks system; order; public hearing; emergency order; action limiting water system expansion or water use,* R 325.10807, *Location of well,* and R 325.10832, *Abandoned wells.* In accordance with Act 368 and the administrative rules, Tallmadge Meadows is not in compliance with R 325.1752, *Electrical connections* (Rule 252), and R 325.1662, *Abandoned wells and dry holes; persons responsible for plugging; removal of debris and obstructions; wells taken out of service when municipal water is installed* (Rule 162), as outlined below:

- 325.1015 Section 15. (1) When considered necessary for protection of public health, the department shall notify a supplier of water of the need to make changes in operations, to provide treatment, to make structural changes in existing systems, or to add additional

Ara Darakjian
Page 2
January 14, 2026

> capacity as necessary to produce and distribute and adequate quantity of water meeting the state drinking water standards.
> - R 325.10807(c) Constructed to maintain existing natural protection against contamination of water-bearing formations and to prevent all known sources of contamination from entering the well. (d) Protected against the entry of surface water.
> - Per Act 368 Rule 252, electrical connections to the pumping equipment shall be made in accordance with applicable electrical codes and shall be made in a manner that protects the safety and welfare of workers and the public from possible electrical shock.
> - R 325.10832. An abandoned well shall be properly filled and sealed to prevent it from becoming a hazard or serving as a channel for contamination of groundwater or the escape of subterranean gas.
> - Per Act 368 Rule 162, (1) An abandoned well or dry hole shall be plugged by a well-drilling contractor who is registered pursuant to the provisions of the act or by the well owner. An abandoned well that is located on property which has a well that serves the public or a residence other than the well owner's residence, shall be plugged by a registered well drilling contractor. (2) A pump, a drop pipe, a packer, other equipment, debris, or obstructions shall be removed from the well, if possible, before plugging.

On January 6, 2026, EGLE responded to complaints of no pressure and low pressure at multiple locations within Tallmadge Meadows. While confirming the complaints, EGLE inspected the wellheads for Wells 1, 2, and 4. The conduits on Wells 1 and 4 were disconnected from the wellhead or cracked, creating a direct source of contamination to the source water for Tallmadge Meadows' community drinking water supply. Additionally, the cap for Well 2 was not covering the wellhead, allowing a direct source of contamination into the aquifer providing Tallmadge Meadows' source water. Well 2 was inactivated after it was replaced by Well 4 in 2022 or 2023. However, Well 2 has not been properly abandoned by cutting and capping the casing below grade.

Upon receipt of this letter, Tallmadge Meadows must **immediately** make temporary repairs to minimize pathways of contamination to the source water and aquifer. Submit documentation to EGLE of the following activities:
- Reinstall the cap on Well 2.
- Seal off the unprotected openings on Wells 1 and 4.
- Inspect Well # behind the RV storage shed.

Additionally, Tallmadge Meadows must conduct weekly source water sampling for bacteriological contamination from all active wells until the unprotected openings are permanently repaired by a licensed well driller.

Corrective actions, such as permanent repairs to Wells 1 and 4 and the abandonment of Well 2, are required to be completed by a licensed well driller.

Our investigation is considered complete. This significant deficiency begins as of the date of this letter and will continue until Tallmadge Meadows completes all corrective actions within 30 days of the date of this letter or be in a compliance agreement (in the form of an Administrative

Ara Darakjian
Page 3
January 14, 2026

Consent Order) that includes a binding corrective action plan and schedule. Provide EGLE with a plan to complete the corrective actions schedule, in writing, within 30 days of the date of this letter.

If you have any factual information you would like us to consider regarding the significant deficiency identified in this Significant Deficiency Notice please provide it in a written response by February 13, 2026.

Please note that any Significant Deficiency (SD) that remains unresolved at the time the annual Consumer Confidence Report (CCR) is distributed, the water supplier is required to provide a Special Notice in its CCR. The water supplier must inform your customers of the details regarding the unresolved SD including the date the SD was identified by EGLE; the EGLE approved plan and schedule for correction along with the current progress toward this approved plan. This Special Notice requirement shall be included in all future CCRs until the SD has been resolved.

We anticipate and appreciate your cooperation in resolving this matter. If you have any questions regarding this Significant Deficiency Notice, please contact Stephanie Alvara at AlvaraS@michigan.gov or (616) 893-1594.

Sincerely,

*SAlvara*

Stephanie Alvara, P.E.
District Engineer
Grand Rapids District Office
Drinking Water and Environmental Health
Division

cc: Joseph McMahon, Residents First
Heather Moots, Residents First
Todd Shank, LTI Services Group
Katelyn Reyes, EGLE (for all Manufactured Housing Communities) (via email)
Amy Vail, EGLE Field Operations Section Manager (via email)
Jeni Bolt, EGLE Grand Rapids District Supervisor (via email)
Matt Allen, Ottawa County Health Department (via email)
Alicia Hawkins, EGLE (via email)
Kent County Health Department (via email)
DLARA (via email)

# EXHIBIT C



STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

**EGLE**

GRETCHEN WHITMER
GOVERNOR

PHILLIP D. ROOS
DIRECTOR

February 2, 2026

VIA EMAIL

Ara J. Darakjian, Resident Agent
Tallmadge Meadows MHC, LLC
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

Dear Ara J. Darakjian:

SUBJECT: Administrative Compliance Agreement (ACA) ACA-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;
Tallmadge Meadows Mobile Home Community (MHC); WSSN: 40426

A fully executed ACA between Tallmadge Meadows MHC, LLC, and the Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division, regarding the water supply at Tallmadge Meadows MHC, has been processed via the State of Michigan's eSignature Solutions OneSpan (OneSpan) database. The compliance schedule in this ACA is meant to bring the water supply into compliance with the Michigan Safe Drinking Water Act, 1976 PA 399, as amended (Act 399). The effective date of the ACA is January 30, 2026.

The fully executed ACA is accessible to you via OneSpan for 30 days from the effective date of the ACA, noted above. During this time, you may download and/or save the ACA for your records. The fully executed ACA transaction will be automatically deleted from the database after 30 days. This is an automated life cycle management process performed by the database system. Please make sure you download your signed documents from this transaction and place them in your business repository. Upon request, EGLE will provide a copy of the fully executed ACA.

EGLE appreciates your cooperation and resolution of this matter. Please feel free to contact Alicia Hawkins at HawkinsA11@Michigan.gov, or 586-220-9233 in the future should you have any questions regarding the Compliance Agreement. You may also contact Stephanie Alvara, Grand Rapids District Office, DWEHD, at 616-893-1594 or, AlvaraS@Michigan.gov, for other questions related to compliance with Michigan's water protection laws.

Ara J. Darakjian, Resident Agent
Tallmadge Meadows MHC, LLC
Page 2
February 2, 2026

If you have any questions, please contact me at 517-242-8328;
NelsonM2@Michigan.gov; or EGLE, P.O. Box 30817, Lansing Michigan 48909-8311.

Sincerely,

**Maureen Nelson**

Digitally signed by: Maureen Nelson
DN: CN = Maureen Nelson email =
nelsonm2@michigan.gov C = US O =
State of Michigan OU = EGLE
Date: 2026.02.02 14:19:11 -05'00'

Maureen Nelson
Acting Enforcement Unit Supervisor
Drinking Water and Environmental Health Division

Attachment

cc/att: Heather Moot, Tallmadge Meadows MHC
        Adeline Hambley, Ottawa County Health Department
        Matt Allen, Ottawa County Health Department
        Spencer Ballard, Ottawa County Health Department
        Ken Bowen, Department of Health and Human Services
        Kaitlyn DeFouw, Department of Health and Human Services
        Mobile Home Licensing, Department of Licensing and Regulatory Affairs
        Brandon Onan, EGLE
        Brian Thurston, EGLE
        Amy Vail, EGLE
        Jennifer Bolt, EGLE
        Katelyn Reyes, EGLE
        Stephanie Alvara, EGLE
        Alicia Hawkins, EGLE

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY
DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

ADMINISTRATIVE COMPLIANCE AGREEMENT

In the matter of:                          DWEHD Agreement No. ACA-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

SECTION I

FACILITY OWNER/OPERATOR

| NAME Tallmadge Meadows MHC, LLC | | OWNER☒ | OPERATOR☒ |
|---|---|---|---|
| DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS BUSINESS IDENTIFICATION NUMBER 801298232 | | | |
| ADDRESS 217 Pierce Street, Suite 209 | | | |
| CITY Birmingham | STATE Michigan | ZIP CODE 48009 | |
| CONTACT NAME/TITLE Ara J Darakjian, Resident Agent | PHONE # 248-819-6000 | | |

FACILITY NAME AND LOCATION

| FACILITY NAME Tallmadge Meadows MHC | | WATER SUPPLY SERIAL NUMBER 40426 |
|---|---|---|
| FACILITY OWNER IF NOT IDENTIFIED ABOVE | | |
| ADDRESS 11630 14th Avenue NW | | |
| CITY Grand Rapids | STATE Michigan | ZIP CODE 49534 |
| COUNTY Ottawa | | |
| CONTACT NAME Ara J Darakjian | PHONE # 248-819-6000 | |

1.1    This document results from allegations by the Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division (DWEHD). EGLE alleges that Tallmadge Meadows MHC, LLC (Owner/Operator), Owner/Operator of the above-referenced facility, is in violation of the Safe Drinking Water Act, 1976 PA 399, as amended (Act 399), and the administrative rules promulgated thereunder.

1.2    Specific alleged violations are referenced in the EGLE Significant Deficiency Notices (SDN) attached to this Administrative Compliance Agreement (Compliance Agreement) as Exhibit A. The Owner/Operator and EGLE agree to resolve the alleged violations set forth therein through entry of this Compliance Agreement. The Owner/Operator agrees to resolve all compliance issues set forth in Exhibit A in accordance with the requirements contained in this Compliance Agreement. This Compliance Agreement, in its entirety, shall consist of Section I, the attached Sections II, III, and IV, Exhibit A, and any other referenced attachments, exhibits, or appendices. This Compliance Agreement shall be considered null and void if it does not include, at a minimum, Sections I, II, III, and IV and Exhibit A. The Owner/Operator further agrees that this Compliance Agreement shall become effective on the date it is signed by the DWEHD Director, designee of the EGLE Director.

- 1 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

1.3    The Owner/Operator agrees to pay stipulated penalties of $500 per day and provide public notification for failure to complete corrective actions as specified in Section II, Compliance Schedule, unless an extension has been approved under Paragraph 4.14, of this Compliance Agreement.  Failure to make a timely payment constitutes a violation of this Compliance Agreement.

1.4    The Owner/Operator agrees to make payment of all funds due pursuant to this agreement by certified check made payable to the "State of Michigan" and mailed to the Accounting Services Division, Cashier's Office for EGLE, P.O. Box 30657, Lansing, Michigan 48909-8157.  To ensure proper credit, all payments made pursuant to this Compliance Agreement must include "Payment Identification Number DWEHD90171" on the check.  The Owner/Operator agrees not to contest the legality of the civil fine.

<u>Signatories</u>

**DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY**


E-SIGNED by Eric J. Oswald
on 2026-01-30 16:00:35 EST
_____
Eric J. Oswald, Director
Drinking Water and Environmental Health Division

2026-01-30 16:00:35

_____
Date


I, the undersigned, CERTIFY that I am fully authorized by the party identified above to enter into this Compliance Agreement to comply by consent and to EXECUTE and LEGALLY BIND that party to it.  I further attest that all information provided herein is accurate and true.

**TALLMADGE MEADOWS MHC, LLC**

E-SIGNED by Ara J. Darakjian
on 2026-01-30 15:55:45 EST
_____
Ara J. Darakjian, Owner/Operator

2026-01-30 15:55:45

_____
Date

-2-

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

### SECTION II - COMPLIANCE SCHEDULE

IT IS THEREFORE AGREED AND ORDERED THAT the Owner/Operator shall take the following actions to prevent further violations of Act 399 and the administrative rules promulgated thereunder and/or to correct the significant deficiencies identified in the SDNs attached to this Compliance Agreement as Exhibit A.

2.1    Not later than February 13, 2026, the Owner/Operator shall seal any unprotected openings in each groundwater well casing at the well seal, well vent, electrical conduit, and transducer junction box, in accordance with Part 127 Water Supply and Sewer Systems, of the Michigan Public Health Code, 1978 PA 368, as amended, MCL 333.12701 *et. seq.*, and the administrative rules promulgated thereunder. This work shall be performed by a Michigan registered well driller, and notification of completion and request for a compliance inspection shall be submitted to EGLE, in writing, by the compliance deadline. EGLE will notify the Owner/Operator, in writing, of approval or any deficiencies in the corrective action.

2.2    Not later than 14 days from the effective date of this Compliance Agreement, the Owner/Operator shall submit to EGLE, for review and approval, a written workplan to demonstrate how the Tallmadge Meadows Mobile Home Community (MHC) water supply will meet sufficient capacity and pressure requirements in accordance with R 325.1015 Section 15 and R 325.11105 of Act 399 and the administrative rules. EGLE will notify the Owner/Operator, in writing, of approval or any deficiencies in the workplan. Corrections to the workplan must be submitted to EGLE within seven (7) days. The EGLE-approved workplan will be incorporated into this Compliance Agreement by reference.

2.3    Not later than 90 days from the effective date of this Compliance Agreement, the Owner/Operator shall demonstrate to EGLE that the Tallmadge Meadows MHC water supply has sufficient capacity and system pressure in accordance with R 325.1015 Section 15 and R 325.11105 of Act 399 and the administrative rules.

2.4    As of the effective date of this Compliance Agreement, if any portion of the Tallmadge Meadows MHC water system water pressure drops below 20 pounds per square inch (psi), the Owner/Operator shall 1) issue a boil water advisory to all affected residents within 24 hours, by mail or other direct delivery, and have the notice posted in public places within the Tallmadge Meadows MHC; 2) provide an adequate amount of bottled water (at least one gallon per person, per day), to residents to meet the needs of Tallmadge Meadows MHC during any boil water advisory event or water outage. Delivery must be made available upon request and provided within 24 hours of the request; and 3) restore the water pressure to over 35 psi within seven (7) days of identification of pressure loss. A copy of the boil water advisory notice shall be submitted to EGLE not later than ten (10) days from resident notification.

Prior to lifting the boil water advisory, the Owner/Operator shall submit bacteriological water samples to a state certified laboratory in accordance with the EGLE-approved sampling site plan and policy DWEHD-399-022, *Guidelines for Issuing Boil Water Advisories to Address Potential Microbial Contamination of Community Water Supplies.* Copies of the water sample results shall be submitted to EGLE not later than ten (10) days after the Owner/Operator receives the sample results. The Owner/Operator shall notify EGLE, in writing, when the boil water advisory is lifted.

- 3 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

2.5    The Owner/Operator shall notify all residents connected to the Tallmadge Meadows MHC water system of any scheduled water shut-off via text messaging, electronic mail, and door delivery at least 72 hours prior to the scheduled shut-off.  The Owner/Operator shall notify EGLE, in writing, of water shut-off activities and associated communications with residents within seven (7) business days of resident notification.  EGLE will notify the Owner/Operator, in writing, of approval or deficiencies in the submittal.

Sections III and IV of this Compliance Agreement shall not be altered in any way, including adding or eliminating any language, striking terms or parts of terms, retyping in whole or in part, or using a different format.  Any changes to this document without written approval from EGLE renders the Compliance Agreement null and void.

## SECTION III - STIPULATIONS

The Owner/Operator and EGLE stipulate as follows:

3.1    EGLE is authorized to enter this Compliance Agreement requiring the Owner/Operator to comply with state law under Section 15 of Act 399.

3.2    The Owner/Operator consents to the issuance and entry of this Compliance Agreement and stipulates that the entry of this Compliance Agreement constitutes a final order of EGLE and is enforceable as such under the appropriate provisions of state law identified in this Compliance Agreement.  The Owner/Operator agrees not to contest the issuance of this Compliance Agreement and that the resolution of this matter by the entry of this Compliance Agreement is appropriate and acceptable.

3.3    The Owner/Operator and EGLE agree that the signing of this Compliance Agreement is for settlement purposes only and does not constitute an admission by the Owner/Operator that the law has been violated.

3.4    The Signatory to this Compliance Agreement on behalf of the Owner/Operator agrees and attests that he/she is fully authorized to ensure that the Owner/Operator will comply with all requirements under this Compliance Agreement.

3.5    The Owner/Operator shall achieve compliance with the aforementioned regulations in accordance with the requirements contained in Section II of this Compliance Agreement.

## SECTION IV - GENERAL PROVISIONS

The Owner/Operator and EGLE further stipulate as follows:

4.1    With respect to any violations not specifically addressed and resolved by this Compliance Agreement, EGLE reserves the right to pursue any other remedies to which it is entitled for any failure on the part of the Owner/Operator to comply with the requirements of Act 399 and the administrative rules promulgated thereunder.

4.2    EGLE and the Owner/Operator consent to enforcement of this Compliance Agreement in the same manner and by the same procedures for all final orders entered pursuant to the provisions of Act 399.

- 4 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

4.3    This Compliance Agreement in no way affects the Owner/Operator's responsibility to comply with any other applicable local, state, or federal laws or regulations.

4.4    EGLE reserves its right to pursue appropriate action, including injunctive relief to enforce the provisions of this Compliance Agreement, and applicable statutory fines for any violation of this Compliance Agreement.

4.5    Nothing in this Compliance Agreement is or shall be considered to affect any liability the Owner/Operator may have for natural resource damages caused by the Owner/Operator's acts or omissions at the facility.  The State of Michigan does not waive any rights to bring an appropriate action to recover such damages to the natural resources.

4.6    In the event the Owner/Operator sells or transfers the facility, he/she shall advise any purchaser or transferee of the existence of this Compliance Agreement in connection with such sale or transfer.  Within 30 calendar days, the Owner/Operator shall also notify the DWEHD District Supervisor, in writing, at Grand Rapids District Office, P.O. Box 30817, Lansing, Michigan 48909-8311 of such sale or transfer, the identity and address of any purchaser or transferee, and confirm the fact that notice of this Compliance Agreement has been given to the purchaser and/or transferee.  The purchaser and/or transferee of this Compliance Agreement must agree, in writing, to assume all of the obligations of this Compliance Agreement.  A copy of that agreement shall be submitted to the DWEHD District Supervisor within 30 days of assuming the obligations of this Compliance Agreement.

4.7    The provisions of this Compliance Agreement shall apply to and be binding upon the parties to this action and their successors and assigns.

4.8    This Compliance Agreement constitutes a civil settlement and satisfaction as to the resolution of the violations specifically addressed herein; however, it does not resolve any criminal action that may result from these same violations.

<u>Reporting</u>

4.9    The Owner/Operator shall make all submittals and written notifications required by this Compliance Agreement, to the DWEHD Enforcement Analyst, at EGLE-DWEHD-Enforcement@Michigan.gov, or EGLE-DWEHD, Deborah A. Stabenow Building, P.O. Box 30817, Lansing, Michigan 48909-8311.  The cover letter with each submittal or notification shall identify the specific paragraph and requirement of this Compliance Agreement that the submittal or notification is intended to satisfy.

4.10    The Owner/Operator shall verbally report any violation(s) of the terms and conditions of this Compliance Agreement to the DWEHD District Supervisor at 517-331-5161 by no later than the close of the next business day following detection of such violation(s) and shall follow such notification with submittal of a written report within five business days following detection of such violation(s).  The written report shall include a detailed description of the violation(s), as well as a description of any actions proposed or taken to correct the violation(s).  The Owner/Operator shall report any anticipated violation(s) of this Compliance Agreement to the above-referenced individual in advance of the relevant deadlines whenever possible.

- 5 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

### Retention of Records

4.11    Upon request by an authorized representative of EGLE, the Owner/Operator shall make available to EGLE all records, plans, logs, and other documents required to be maintained under this Compliance Agreement or pursuant to applicable laws or rules. All such documents shall be retained by the Owner/Operator for at least a period of three years from the date of generation of the record unless a longer period of record retention is required by the applicable law or its rules.

### Right of Entry

4.12    The Owner/Operator shall allow any authorized representative or contractor of EGLE, upon presentation of proper credentials, to enter upon the premises of the facility at all reasonable times for the purpose of monitoring compliance with the provisions of this Compliance Agreement.  This paragraph in no way limits the authority of EGLE to conduct tests and inspections pursuant to Act 399 and the administrative rules promulgated thereunder or any other applicable statutory provision.

### EGLE Approval of Submittals

4.13    For any work plan, proposal, or other document, excluding applications for permits or licenses, that are required by this Compliance Agreement to be submitted to EGLE by the Owner/Operator, the following process and terms of approval shall apply:

a.    All work plans, proposals, and other documents required to be submitted by this Compliance Agreement shall include all of the information required by the applicable statute and/or rule and all of the information required by the applicable paragraph(s) of this Compliance Agreement.

b.    In the event EGLE disapproves a work plan, proposal, or other document, it will notify the Owner/Operator, in writing, specifying the reasons for such disapproval. The Owner/Operator shall submit, within 30 days of receipt of such disapproval, a revised work plan, proposal, or other document that adequately addresses the reasons for EGLE's disapproval.  If the revised work plan, proposal, or other document is still not acceptable to EGLE, EGLE will notify the Owner/Operator, in writing, of this disapproval.

c.    In the event EGLE approves with specific modifications, a work plan, proposal, or other document, it will notify the Owner/Operator, in writing, specifying the modifications required to be made to such work plan, proposal, or other document prior to its implementation and the specific reasons for such modifications.  EGLE may require the Owner/Operator to submit, prior to implementation and within 30 days of receipt of such approval with specific modifications, a revised work plan, proposal, or other document that adequately addresses such modifications.  If the revised work plan, proposal, or other document is still not acceptable to EGLE, EGLE will notify the Owner/Operator, in writing, of this disapproval.

d.    Upon EGLE approval, or approval with modifications, of a work plan, proposal, or other document, such work plan, proposal, or other document shall be incorporated by reference into this Compliance Agreement and shall be enforceable in accordance with the provisions of this Compliance Agreement.

- 6 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

e. Failure by the Owner/Operator to submit an approvable work plan, proposal, or other document, within the applicable time periods specified above, constitutes a violation of this Compliance Agreement and shall subject the Owner/Operator to the enforcement provisions of this Compliance Agreement.

f. Any delays caused by the Owner/Operator's failure to submit an approvable work plan, proposal, or other document when due shall in no way affect or alter the Owner/Operator's responsibility to comply with any other deadline(s) specified in this Compliance Agreement.

g. No informal advice, guidance, suggestions, or comments by EGLE regarding reports, work plans, plans, specifications, schedules, or any other writing submitted by the Owner/Operator will be construed as relieving the Owner/Operator of his/her obligation to obtain written approval, if and when required by this Compliance Agreement.

### Extensions

4.14 The Owner/Operator and EGLE agree that EGLE may grant the Owner/Operator a reasonable extension of the specified deadlines set forth in this Compliance Agreement. Any extension shall be preceded by a written request to the DWEHD District Supervisor no later than ten business days prior to the pertinent deadline and shall include:

a. Identification of the specific deadline(s) of this Compliance Agreement that will not be met.

b. A detailed description of the circumstances that will prevent the Owner/Operator from meeting the deadline(s).

c. A description of the measures the Owner/Operator has taken and/or intends to take to meet the required deadline(s).

d. The length of the extension requested and the specific date on which the obligation will be met.

No change or modification to this Compliance Agreement shall be valid unless in writing from EGLE and, if applicable, signed by both parties.

### Termination

4.15 This Compliance Agreement shall remain in full force and effect until terminated by a written Termination Notice (TN) issued by EGLE. Prior to issuance of a written TN, the Owner/Operator shall submit a request consisting of a written certification that the Owner/Operator has fully complied with the requirements of this Compliance Agreement and has made payment of any fines required in this Compliance Agreement. Specifically, this certification shall include:

a. The date of compliance with each provision of the compliance program in Section II of this Compliance Agreement, and the date any fines or penalties were paid.

b. A statement that all required information has been reported to the DWEHD District Supervisor.

- 7 -

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

     c. Confirmation that all records required to be maintained pursuant to this Compliance Agreement are being maintained at the facility.

EGLE may also request additional relevant information. EGLE shall not unreasonably withhold issuance of a TN.

Tallmadge Meadows MHC, LLC
Administrative Compliance Agreement

Exhibit A
Administrative Compliance Agreement

Enforcement Type                                                    Issue Date

Significant Deficiency Notice                                       September 11, 2025

Significant Deficiency Notice                                       January 14, 2026

- 9 -

Exhibit A



GRETCHEN WHITMER
GOVERNOR

STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

**EGLE**

PHILLIP D. ROOS
DIRECTOR

September 11, 2025

VIA EMAIL AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Ara Darakjian
Tallmadge Meadows
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

SIGNIFICANT DEFICIENCY NOTICE
WSSN: 40426

Dear Ara Darakjian:

SUBJECT: Significant Deficiency Notice – Capacity of the Distribution System
Tallmadge Meadows – WSSN: 40426

The Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division (DWEHD), records show that Tallmadge Meadows is not in compliance with the Safe Drinking Water Act 1976 PA 399, as amended (Act 399).

Significant deficiencies represent an immediate health risk to consumers of water and indicate noncompliance with Act 399 and the promulgated rules. Significant deficiencies are serious sanitary deficiencies identified in water systems which include, but are not limited to, defects in design, operation, maintenance, or a failure or malfunction of the sources; treatment, storage, or distribution systems that are determined to be causing, or have the potential to cause, contamination into the public water supply.

Significant deficiencies must be corrected, or the water supply must have an EGLE-approved corrective action plan, within 120 days of the date of this letter, or earlier if specified by EGLE. Failure to meet the deadline is a treatment technique violation with public notice requirements.

In accordance with Act 399 and the administrative rules, Tallmadge Meadows is not in compliance with 325.1015, Section 15, *Protection of public health; notice to supplier of water; inspection of waterworks system; order; public hearing; emergency order; action limiting water system expansion or water use,* and R 325.11105, *Capacity of distribution system; fire hydrants; inadequately sized watermains.*

- 325.1015 Section 15. (1) When considered necessary for protection of public health, the department shall notify a supplier of water of the need to make changes in operations, to provide treatment, to make structural changes in existing systems, or to add additional capacity as necessary to produce and distribute and adequate quantity of water meeting the state drinking water standards.
- R 325.11105 (1) Distribution systems shall have sufficient capacity to meet peak demands, including fire flow demands where fire protection is provided, while

Ara Darakjian
Page 2
September 11, 2025

continuously maintaining a minimum of 35 psi throughout the distribution system under normal operating conditions and 20 psi throughout the distribution system during emergencies such as firefighting.

On July 16, 2025, EGLE responded to a complaint of low pressure and black water at 1344 S. White. The water pressure reduced to zero at 1344 S. White when the flushing hydrant next to the home was turned on. Pictures were taken showing zero pressure inside the home. This is an indication of inadequately sized mains. The inside of the pipes are most likely built up with iron and calcium carbonate reducing the effective size of the watermains.

A pressure recorder was placed at 1344 S. White between July 23 and July 31, 2025. Under normal use conditions for this week, the pressure dropped below 35 psi daily, below 20 psi on at least three separate occasions and lost pressure completely at least once during the week it was monitored. No boil water alert or bacteriological samples were received by EGLE in response to this loss of pressure in the distribution system. Another neighbor on S. White complained of low pressure. Overall, the community is unable to provide sufficient pressure during normal operations and is unable to perform routine flushing of the system without causing pressure losses. Flushing of the system is routine maintenance and should occur regularly.

Additionally, the iron, dirt and debris that accumulates at 1344 S. White is objectionable. In October 2022 and July 2024, black water was filmed in a video coming out of the outside spigot of 1344 S. White. A filter was installed by the management for the resident but plugs up frequently because this is not a permanent solution. The debris coming from the distribution piping will ruin hot water heaters and other appliances in the home.

Because of this ongoing capacity issue in the distribution system, EGLE is requiring a full engineering study to ensure the system is sufficiently designed and to ensure required minimum pressure to all users and resolve water quality issues.

Our investigation is considered complete. This significant deficiency begins as of the date of this letter and will continue until Tallmadge Meadows completes corrective action within 120 days of the date of this letter or be in a compliance agreement (in the form of an Administrative Consent Order) that includes a binding corrective action plan and schedule. Provide EGLE with a corrective action plan and schedule, in writing, within 30 days of the date of this letter.

If you have any factual information you would like us to consider regarding the significant deficiency identified in this Significant Deficiency Notice please provide it in a written response by October 11, 2025.

Ara Darakjian
Page 3
September 11, 2025

Please note that any Significant Deficiency (SD) that remains unresolved at the time the annual Consumer Confidence Report (CCR) is distributed, the water supplier is required to provide a Special Notice in its CCR. The water supplier must inform your customers on the details regarding the unresolved SD including the date the SD was identified by EGLE; the EGLE approved plan and schedule for correction along with the current progress toward this approved plan. This Special Notice requirement shall be included in all future CCRs until the SD has been resolved.

We anticipate and appreciate your cooperation in resolving this matter. If you have any questions regarding this Significant Deficiency Notice, please contact Brian Esparsa at esparsab@michigan.gov or 616-307-0006.

Sincerely,

Brian Esparsa
Grand Rapids District Office
Drinking Water and Environmental Health
Division

Enclosure
cc:  Katelyn Reyes, EGLE (for all Manufactured Housing Communities)
     Amy Vail Field Operations Section Manager, EGLE
     Matt Allen, EGLE
     Alicia Hawkins, EGLE
     Kent County Health Department
     DLARA

Case 1:26-cv-01788-PLM-RSK    ECF No. 11-3, PageID.535    Filed 06/18/26    Page 36 of 64



7-23-25

Tallmadge
Meadows
Begin 1:45PM
Lot/Address 1344
N. White

7-31-25
End 12:30 PM



Exhibit A



**STATE OF MICHIGAN**
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
DRINKING WATER AND ENVIRONMENTAL HEALTH DIVISION

GRETCHEN WHITMER
GOVERNOR

**EGLE**

PHILLIP D. ROOS
DIRECTOR

January 14, 2026

VIA EMAIL AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Ara Darakjian
Tallmadge Meadows
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

SIGNIFICANT DEFICIENCY NOTICE
WSSN: 40426

Dear Ara Darakjian:

SUBJECT: Significant Deficiency Notice – Source Water Protection & Wellhead Condition
Tallmadge Meadows – WSSN: 40426

The Department of Environment, Great Lakes, and Energy (EGLE), Drinking Water and Environmental Health Division (DWEHD), records show that Tallmadge Meadows is not in compliance with the Safe Drinking Water Act 1976 PA 399, as amended (Act 399), and the administrative rules promulgated thereunder and, the Public Health Code 1978 PA 368, as amended (Act 368), and the administrative rules promulgated thereunder.

Significant deficiencies represent an immediate health risk to consumers of water and indicate noncompliance with Act 399 and the promulgated rules. Significant deficiencies are serious sanitary deficiencies identified in water systems which include, but are not limited to, defects in design, operation, maintenance, or a failure or malfunction of the sources; treatment, storage, or distribution systems that are determined to be causing, or have the potential to cause, contamination into the public water supply.

Significant deficiencies must be corrected, or the water supply must have an EGLE-approved corrective action plan, within 120 days of the date of this letter, or earlier if specified by EGLE. Failure to meet the deadline is a treatment technique violation with public notice requirements.

In accordance with Act 399 and the administrative rules, Tallmadge Meadows is not in compliance with 325.1015, Section 15, *Protection of public health; notice to supplier of water; inspection of waterworks system; order; public hearing; emergency order; action limiting water system expansion or water use,* R 325.10807, *Location of well,* and R 325.10832, *Abandoned wells.* In accordance with Act 368 and the administrative rules, Tallmadge Meadows is not in compliance with R 325.1752, *Electrical connections* (Rule 252), and R 325.1662, *Abandoned wells and dry holes; persons responsible for plugging; removal of debris and obstructions; wells taken out of service when municipal water is installed* (Rule 162), as outlined below:

- 325.1015 Section 15. (1) When considered necessary for protection of public health, the department shall notify a supplier of water of the need to make changes in operations, to provide treatment, to make structural changes in existing systems, or to add additional

Ara Darakjian
Page 2
January 14, 2026

capacity as necessary to produce and distribute and adequate quantity of water meeting the state drinking water standards.

- R 325.10807(c) Constructed to maintain existing natural protection against contamination of water-bearing formations and to prevent all known sources of contamination from entering the well. (d) Protected against the entry of surface water.
- Per Act 368 Rule 252, electrical connections to the pumping equipment shall be made in accordance with applicable electrical codes and shall be made in a manner that protects the safety and welfare of workers and the public from possible electrical shock.
- R 325.10832. An abandoned well shall be properly filled and sealed to prevent it from becoming a hazard or serving as a channel for contamination of groundwater or the escape of subterranean gas.
- Per Act 368 Rule 162, (1) An abandoned well or dry hole shall be plugged by a well-drilling contractor who is registered pursuant to the provisions of the act or by the well owner. An abandoned well that is located on property which has a well that serves the public or a residence other than the well owner's residence, shall be plugged by a registered well drilling contractor. (2) A pump, a drop pipe, a packer, other equipment, debris, or obstructions shall be removed from the well, if possible, before plugging.

On January 6, 2026, EGLE responded to complaints of no pressure and low pressure at multiple locations within Tallmadge Meadows. While confirming the complaints, EGLE inspected the wellheads for Wells 1, 2, and 4. The conduits on Wells 1 and 4 were disconnected from the wellhead or cracked, creating a direct source of contamination to the source water for Tallmadge Meadows' community drinking water supply. Additionally, the cap for Well 2 was not covering the wellhead, allowing a direct source of contamination into the aquifer providing Tallmadge Meadows' source water. Well 2 was inactivated after it was replaced by Well 4 in 2022 or 2023. However, Well 2 has not been properly abandoned by cutting and capping the casing below grade.

Upon receipt of this letter, Tallmadge Meadows must **immediately** make temporary repairs to minimize pathways of contamination to the source water and aquifer. Submit documentation to EGLE of the following activities:
- Reinstall the cap on Well 2.
- Seal off the unprotected openings on Wells 1 and 4.
- Inspect Well # behind the RV storage shed.

Additionally, Tallmadge Meadows must conduct weekly source water sampling for bacteriological contamination from all active wells until the unprotected openings are permanently repaired by a licensed well driller.

Corrective actions, such as permanent repairs to Wells 1 and 4 and the abandonment of Well 2, are required to be completed by a licensed well driller.

Our investigation is considered complete. This significant deficiency begins as of the date of this letter and will continue until Tallmadge Meadows completes all corrective actions within 30 days of the date of this letter or be in a compliance agreement (in the form of an Administrative

Ara Darakjian
Page 3
January 14, 2026

Consent Order) that includes a binding corrective action plan and schedule. Provide EGLE with a plan to complete the corrective actions schedule, in writing, within 30 days of the date of this letter.

If you have any factual information you would like us to consider regarding the significant deficiency identified in this Significant Deficiency Notice please provide it in a written response by February 13, 2026.

Please note that any Significant Deficiency (SD) that remains unresolved at the time the annual Consumer Confidence Report (CCR) is distributed, the water supplier is required to provide a Special Notice in its CCR. The water supplier must inform your customers of the details regarding the unresolved SD including the date the SD was identified by EGLE; the EGLE approved plan and schedule for correction along with the current progress toward this approved plan. This Special Notice requirement shall be included in all future CCRs until the SD has been resolved.

We anticipate and appreciate your cooperation in resolving this matter. If you have any questions regarding this Significant Deficiency Notice, please contact Stephanie Alvara at AlvaraS@michigan.gov or (616) 893-1594.

Sincerely,

Stephanie Alvara, P.E.
District Engineer
Grand Rapids District Office
Drinking Water and Environmental Health
Division

cc: Joseph McMahon, Residents First
Heather Moots, Residents First
Todd Shank, LTI Services Group
Katelyn Reyes, EGLE (for all Manufactured Housing Communities) (via email)
Amy Vail, EGLE Field Operations Section Manager (via email)
Jeni Bolt, EGLE Grand Rapids District Supervisor (via email)
Matt Allen, Ottawa County Health Department (via email)
Alicia Hawkins, EGLE (via email)
Kent County Health Department (via email)
DLARA (via email)

# EXHIBIT D

*mi*Ottawa Department of Public Health

Adeline Hambley, MBA
Health Officer

Gwen Unzicker, M.D.
Medical Director

COUNTY OF OTTAWA

OTTAWA COUNTY DEPARTMENT OF PUBLIC HEALTH

ORDER FINDING IMMINENT DANGER
TO THE PUBLIC HEALTH
AND
REQUIRING IMMEDIATE CORRECTION

**February 20, 2026**

**Tallmadge Meadows MHC, LLC (License #1200987)**

011630 14th Ave

Grand Rapids, MI 494544

This Order is pursuant to Section 2251 of the Public Health Code, Public Act 368 of 1978, being MCL §333.2428, MCL, §333.2433, and MCL §333.2451.

Matters of concern to the health, safety and welfare of Ottawa County citizens having been brought to the attention of the Health Officer of the Ottawa County Department of Public Health (OCDPH). The Health Officer has made the following determinations and issues this order pursuant to the Michigan Public Health Code, including MCL §333.2428, MCL, §333.2433, and MCL §333.2451:

I.    **Background & Regulatory History**

On September 9, 2025, the Michigan Department of Environment, Great Lakes, and Energy (EGLE) issued Tallmadge Meadows MHC a Significant Deficiency Violation Notice (SDVN) for inadequate water pressure within its distribution system. The park was given 120 days — until January 8, 2026 — to resolve the issue or enter into an administrative compliance agreement with EGLE.

On October 31, 2025, Tallmadge Meadows MHC submitted a draft proposal to EGLE. EGLE determined the proposal was insufficient because it did not include a full engineering study to ensure the distribution system is adequately designed to provide the minimum required pressure to all users and to resolve water quality issues identified in the violation notice.

On December 16, 2025, the community issued a boil water advisory following a break in a water main. While pressure was restored to the east loop of the park, the west loop continued

Imminent Danger Order
Tallmadge Meadows MHC, LLC

Page 1 of 6

to experience low pressure, and the boil water advisory has remained in effect continuously since that date — a period now exceeding sixty (60) days.

On January 6, 2026, EGLE conducted on-site pressure testing and found:

- The east loop generally had acceptable pressures (~50 psi), with one home registering low pressure.
- The west loop had critically low pressures: multiple homes on the south side of the loop recorded 0 psi (no water whatsoever), and the north side recorded pressures of 20 psi or less — well below the 20 psi minimum required by Michigan Safe Drinking Water Act regulations.

On January 8, 2026, the 120-day compliance deadline expired. The park had neither resolved the deficiency nor entered into an administrative compliance agreement with EGLE.

On January 14, 2026, EGLE issued two additional notices:

1. A Treatment Technique Violation Notice for failure to resolve the original September 2025 violation or enter into a compliance agreement; and
2. A second Significant Deficiency Violation Notice for cracked conduits and loose well caps on multiple wells supplying the park's drinking water — conditions that create direct pathways for contamination of the drinking water supply.

As of the date of this Order, Tallmadge Meadows MHC has been operating under unresolved state violation notices for over five (5) months.

## II.    Deficiencies Creating Imminent Threats to Public Health

Upon being made aware of these conditions, OCDPH coordinated emergency measures to assess conditions at the MHC. OCDPH, in partnership with the Michigan Department of Health and Human Services (MDHHS) and Ottawa County Emergency Management, completed on-site door-to-door surveys on February 2 and 3, 2026. Those surveys, along with pressure testing data from EGLE, establish the following imminent threats to public health:

### A. Loss of Potable Water Supply

A significant number of homes — particularly on the west loop — have little to no water available. Homes on the south side of the west loop recorded 0 psi, meaning residents have no running water at all. Even where some pressure exists, it is intermittent and unreliable.

This deprives residents of the ability to:

- Wash hands, a primary measure for preventing the spread of infectious disease;
- Utilize bathroom facilities and flush toilets;
- Prepare food and wash dishes safely;

- Bathe or shower, creating conditions conducive to skin infections and the spread of communicable disease;

## B. Boil Water Advisory of Extended Duration

A boil water advisory has been continuously in effect since December 16, 2025. This advisory indicates that the water supply cannot be assured to be free of microbial contamination. The extended duration of this advisory — now exceeding sixty days — compounds the risk that residents may become noncompliant with the advisory due to hardship, confusion, or fatigue, thereby increasing the likelihood of waterborne illness.

## C. Wastewater and Septic System Failures

Issues with the ability to flush toilets — even in homes where some water remains available — were reported during the door-to-door surveys. Previous deficiencies have been documented with the sewage disposal system at Tallmadge Meadows MHC, with reports of sewage ponding and seepage on the Notice of Violation issued by EGLE. The combination of an inadequate water supply and a compromised sewage disposal system creates cross-contamination risks that significantly elevate the threat of disease transmission within the community.

## D. Vulnerable Populations

Manufactured housing communities frequently include elderly residents, young children, and individuals with chronic health conditions or disabilities who are disproportionately vulnerable to the health effects of inadequate water and sanitation. These populations face heightened risk of dehydration, infection, and disease complications.

## III. Determination

The conditions described above **constitute an imminent danger to public health** within the meaning of MCL 333.2451. The absence of reliable, safe water and the presence of sewage disposal failures deprive residents of basic sanitation necessary to prevent the transmission of infectious disease, bacterial and viral illness, and other serious threats to human health.

## IV. Corrective Actions Required

The Ottawa County Department of Public Health is mandated under PA 368 of 1978, the Public Health Code, to ensure measures that protect public health. Tallmadge Meadows MHC, LLC is therefore ordered to take the following actions:

### Immediate Actions (Within 24 Hours)

1. **Alternative Bathroom and Shower Facilities**

   Submit a plan to OCDPH to provide adequate number of accessible, and sanitary alternative bathroom and shower facilities for all residents who lack functional facilities in their homes. Facilities must be accessible, heated, available at reasonable hours, and be clean and properly maintained. The location(s) and hours of availability must be

communicated in writing to all residents. Temporary portable shower and bathroom facilities can be rented to meet this need.

The numbers below should be considered **minimums.** Given that this is a cold-weather situation (February in Michigan), heated facilities and warm water are essential, and higher water volumes may be needed.

### Example calculation (for illustration — substitute actual resident count):

If **80 residents** are affected on the west loop:

| Need | Standard Applied | Minimum Required |
|---|---|---|
| Toilets | 1 per 20 persons (Sphere/Red Cross) | 4 toilets |
| Showers | 1 per 25 persons (Red Cross) | 3-4 showers |
| Handwashing stations | 1 per 20 persons (Red Cross) | 4 stations |
| Potable water (drinking) | 1 gal/person/day (CDC/FEMA) | 80 gallons/day |
| Potable water (all uses) | 3-5 gal/person/day (TX DSHS/WHO) | 240-400 gallons/day |

2. **Potable Water Supply**

   Provide adequate bulk water and individual drinking water (bottled water) to all residents. Distribution must occur at least daily, and must be sufficient for drinking, cooking, handwashing, and basic hygiene needs. Note, up to 3 – 5 gallons per person per day is necessary for all uses (drinking, cooking, hygiene, and domestic use).

**Short-Term Actions (Within 7 Days)**

3. **Alternative Bathroom and Shower Facilities**

   Approved plan (see Immediate Actions above) is implemented and in place. The location(s) and hours of availability must be communicated in writing to all residents. These must remain in place until lifted by the OCDPH and are subject to inspection by this department.

4. **Sanitary Sewage Disposal**

   Ensure proper collection and disposal of all sanitary sewage generated by the MHC. Where toilets are nonfunctional due to water pressure issues, provide portable sanitation facilities (e.g., portable toilets) in sufficient number and in accessible locations within the park. These must remain in place until lifted by the OCDPH and are subject to inspection by this department.

5. **Resident Communication Plan**

Provide OCDPH with a written communication plan describing how all residents will receive timely updates regarding water quality, available resources, and the status of corrective actions. Communications must be provided in English and any other languages commonly spoken within the community.

## Ongoing Requirements

6. **Continued Interim Services**

   Interim measures of alternative facilities and portable sanitation must remain in place until adequate water service with sufficient pressure is restored. Water distribution must remain in place until adequate water service of sufficient pressure and water quality is restored to all residents, and the boil water advisory is lifted by EGLE.

7. **Progress Reporting**

   Provide written progress reports to OCDPH every seven (7) calendar days detailing the status of all corrective actions, system repairs, water quality testing results, and resident communications.

8. **Sewage System Monitoring**

   Upon restoration of the water supply, conduct continued monitoring of the sewage disposal system to verify that increased water flow does not cause or exacerbate sewage ponding, seepage, or system failure.

A copy of this order shall be delivered to the owner of this establishment via email and certified mail:

Mr. Ara J. Darakjian, Resident Agent

Tallmadge Meadows MHC, LLC

217 Pierce Street, Suite 209

Birmingham, Michigan 48009

Ara.d@residentsfirst.co

**V.    Address for Further Correspondence**
Matt Allen, Onsite Supervisor
OCDPH
12251 James ST
Holland, MI 49424
(616) 393-5664
mallen@miottawa.org


**Failure to comply with this Order may lead to misdemeanor charges, fines, or judicial follow-up.**


By Order of the Health Officer:

_Adeline Hambley_                    Date: February 20, 2026

Adeline Hambley
Health Officer
Ottawa County Department of Public Health


Cc/att (via email): Sarah Matwiejczyk, Ottawa County Prosecutor
                    Doug Van Essen, Ottawa County Corporation Counsel
                    Spencer Ballard, Ottawa County Department of Public Health
                    Mark Bennett, Tallmadge Charter Township
                    Andrew Brisbo, LARA
                    Christine Alexander, EGLE
                    Amanda StAmour, EGLE
                    Eric Oswald, EGLE
                    Brandon Onan, EGLE
                    Brian Thruston, EGLE
                    Kory Groetsch, MDHHS

**EXHIBIT E**



**miOttawa Department of Public Health**

Adeline Hambley, MBA
*Health Officer*

Gwen Unzicker, M.D.
*Medical Director*

COUNTY OF OTTAWA

OTTAWA COUNTY DEPARTMENT OF PUBLIC HEALTH


ORDER FINDING IMMINENT DANGER

TO THE PUBLIC HEALTH

AND

REQUIRING IMMEDIATE CORRECTION


**March 2, 2026**


**Tallmadge Meadows MHC, LLC (License #1200987)**

011630 14th Ave

Grand Rapids, MI 494544


This Order is pursuant to Section 2251 of the Public Health Code, Public Act 368 of 1978, being MCL §333.2428, MCL, §333.2433, and MCL §333.2451.


Matters of concern to the health, safety and welfare of Ottawa County citizens having been brought to the attention of the Health Officer of the Ottawa County Department of Public Health (OCDPH). The Health Officer has made the following determinations and issues this order pursuant to the Michigan Public Health Code, including MCL §333.2428, MCL, §333.2433, and MCL §333.2451:


I.   **Background & Regulatory History**

On September 9, 2025, the Michigan Department of Environment, Great Lakes, and Energy (EGLE) issued Tallmadge Meadows MHC a Significant Deficiency Violation Notice (SDVN) for inadequate water pressure within its distribution system. The park was given 120 days — until January 8, 2026 — to resolve the issue or enter into an administrative compliance agreement with EGLE.


On October 31, 2025, Tallmadge Meadows MHC submitted a draft proposal to EGLE. EGLE determined the proposal was insufficient because it did not include a full engineering study to ensure the distribution system is adequately designed to provide the minimum required pressure to all users and to resolve water quality issues identified in the violation notice.


On December 16, 2025, the community issued a boil water advisory following a break in a water main. While pressure was restored to the east loop of the park, the west loop continued to

experience low pressure, and the boil water advisory has remained in effect continuously since that date — a period now exceeding sixty (60) days.

On January 6, 2026, EGLE conducted on-site pressure testing and found:

- The east loop generally had acceptable pressures (~50 psi), with one home registering low pressure.
- The west loop had critically low pressures: multiple homes on the south side of the loop recorded 0 psi (no water whatsoever), and the north side recorded pressures of 20 psi or less —below the minimum required by Michigan Safe Drinking Water Act regulations.

On January 8, 2026, the 120-day compliance deadline expired. The park had neither resolved the deficiency nor entered into an administrative compliance agreement with EGLE.

On January 14, 2026, EGLE issued two additional notices:

1. A Treatment Technique Violation Notice for failure to resolve the original September 2025 violation or enter into a compliance agreement; and
2. A second Significant Deficiency Violation Notice for cracked conduits and loose well caps on multiple wells supplying the park's drinking water — conditions that create direct pathways for contamination of the drinking water supply.

As of the date of this Order, Tallmadge Meadows MHC has been operating under unresolved state violation notices for over five (5) months.

## II.    Deficiencies Creating Imminent Threats to Public Health

Upon being made aware of these conditions, OCDPH coordinated emergency measures to assess conditions at the MHC. OCDPH, in partnership with the Michigan Department of Health and Human Services (MDHHS) and Ottawa County Emergency Management, completed on-site door-to-door surveys on February 2 and 3, 2026. Those surveys, along with pressure testing data from EGLE, establish the following imminent threats to public health:

### A. Loss of Potable Water Supply

A significant number of homes — particularly on the west loop — have little to no water available. Homes on the south side of the west loop recorded 0 psi, meaning residents have no running water at all. Even where some pressure exists, it is intermittent and unreliable.

This deprives residents of the ability to:

- Wash hands, a primary measure for preventing the spread of infectious disease;
- Utilize bathroom facilities and flush toilets;
- Prepare food and wash dishes safely;
- Bathe or shower, creating conditions conducive to skin infections and the spread of communicable disease;

### B. Boil Water Advisory of Extended Duration

A boil water advisory has been continuously in effect since December 16, 2025. This advisory indicates that the water supply cannot be assured to be free of microbial contamination. The extended duration of this advisory — now exceeding sixty days — compounds the risk that residents may become noncompliant with the advisory due to hardship, confusion, or fatigue, thereby increasing the likelihood of waterborne illness.

### C. Wastewater and Septic System Failures

Issues with the ability to flush toilets — even in homes where some water remains available — were reported during the door-to-door surveys. Previous deficiencies have been documented with the sewage disposal system at Tallmadge Meadows MHC, with reports of sewage ponding and seepage on the Notice of Violation issued by EGLE. The combination of an inadequate water supply and a compromised sewage disposal system creates cross-contamination risks that significantly elevate the threat of disease transmission within the community.

### D. Vulnerable Populations

Manufactured housing communities frequently include elderly residents, young children, and individuals with chronic health conditions or disabilities who are disproportionately vulnerable to the health effects of inadequate water and sanitation. These populations face heightened risk of dehydration, infection, and disease complications.

## III.    Determination

The conditions described above **constitute an imminent danger to public health** within the meaning of MCL 333.2451. The absence of reliable, safe water and the presence of sewage disposal failures deprive residents of basic sanitation necessary to prevent the transmission of infectious disease, bacterial and viral illness, and other serious threats to human health.

## IV.    Compliance Plan Submitted February 24, 2026

On February 24, 2026, Heather Moots, District Operations Manager for Residents First, communicated to the OCDPH the following compliance plan (attached):

Alternative Bathroom and Shower Facilities
- Determined residents impacted to be 50-60 people;
- An inventory home (Unit #1230) was currently available for showering, dishwashing, laundry, and filling water jugs;
- Two additional units identified to be opened for use (Unit #1224 was opened and available for use on Tuesday, February 24, and Unit #1175 was opened and available for use on Friday, February 27).

Potable Water Supply
- Bottled water available (in office or by contacting park manager);
- Use of the old laundry room by the office for filling water containers;
- Residents may also fill containers in any of the units opened for showers/toilets.

Resident Communication Plan
- Resident communication via email notifications, notices on residents' doors, and postings at centralized locations;
- Residents will receive weekly updates, or more frequently if conditions change or new information becomes available regarding this plan or the approved EGLE ACA plan.

**OCDPH acknowledges these actions as emergency interim measures taken in initial response to the conditions at Tallmadge Meadows MHC.** However, these measures are not designed or sufficient for sustained, long-term use. In particular, the shower and bathing arrangements as outlined in the plan do not provide adequate hot water availability under continuous or repeated use by multiple residents throughout the day, and do not meet the standard of adequate alternative bathroom and shower facilities necessary to protect public health for the duration of this emergency.

These interim measures must therefore be supplemented with the additional corrective actions set forth below.

## V.    Additional Corrective Actions Required

The Ottawa County Department of Public Health is mandated under PA 368 of 1978, the Public Health Code, to ensure measures that protect public health. Tallmadge Meadows MHC is therefore ordered to take the following actions:

### Within 7 days

1. **Portable Water Containers for Individual Residents**

   Purchase and deploy 5-gallon water containers with spigots (e.g., carboy-style containers such as Uline model S-12768 or equivalent) for all homes experiencing water service interruption. Management shall fill and deliver these containers to affected residences daily.

   A sufficient number of containers must be maintained to allow for uninterrupted daily delivery. For example, a minimum of two (2) containers per residence to allow one to be in use while the other is being refilled and returned. These containers will provide residents with water for flushing toilets, handwashing, and dishwashing within their homes, restoring the ability to utilize basic sanitary facilities in the residence.

### Within 20 days

2. **Shower and Restroom Trailers Designed for Sustained and Continuous Use**

   Install shower and restroom trailers that are specifically designed for repeated, on-demand use and that continuously provide adequate hot water under sustained daily use by multiple residents. Units such as the 3 Stall Master Bath & Shower trailer (e.g., Kerkstra Services, https://kerkstraservices.com/rental/the-master-bath-shower/, or equivalent) — which include enclosed private stalls with a shower, flushable toilet, sink, and hot and cold running water — would meet this requirement. The number of trailers installed must be sufficient to serve the affected resident population in accordance with the emergency sanitation

standards referenced below. These trailers shall replace or supplement the current interim shower arrangements, which are insufficient for long-term use.

Note-there are also portable 100 gallon potable water tanks with pumps that can be placed in each trailer and filled on a schedule. These could be temporarily plumbed into the homes to provide enough water pressure to flush toilets, wash hands, wash dishes, and use the shower. This would also be an acceptable alternative to providing additional shower/bathroom facilities and 5 gallon water containers with spigots.

**Minimum requirements based on 60 affected residents:**

| Need | Standard Applied | Minimum Required |
|---|---|---|
| Toilets | 1 per 20 persons (Sphere/Red Cross) | 3 toilets |
| Showers | 1 per 25 persons (Red Cross) | 3 showers |
| Handwashing stations | 1 per 20 persons (Red Cross) | 3 stations |
| Potable water (drinking) | 1 gal/person/day (CDC/FEMA) | 60 gallons/day |
| Potable water (all uses) | 3-5 gal/person/day (TX DSHS/WHO) | 180-300 gallons/day |

### Ongoing Requirements

3. **Continued Interim Services**

All interim services — including water container delivery, shower and restroom trailers, bottled water distribution, portable sanitation, and any other accommodations provided under this Order, and as was specified in the Compliance Plan submitted on February 24 — must remain in place until both of the following conditions are met:
   a. Adequate, safe water service with sufficient pressure and confirmed water quality is fully restored to all affected residents and the boil water advisory is lifted by EGLE; and
   b. Removal of interim services is approved in writing by the Ottawa County Department of Public Health.

No interim services may be reduced or discontinued without prior written approval from OCDPH.

6. **Progress Reporting**

Provide written progress reports to OCDPH every seven (7) calendar days detailing the status of all corrective actions, system repairs, water quality testing results, and resident communications.

7. **Sewage System Monitoring**

Upon restoration of the water supply, conduct continued monitoring of the sewage disposal system to verify that increased water flow does not cause or exacerbate sewage ponding, seepage, or system failure.

A copy of this order shall be delivered to the owner of this establishment via email and certified mail:

Mr. Ara J. Darakjian, Resident Agent

Tallmadge Meadows MHC, LLC

217 Pierce Street, Suite 209

Birmingham, Michigan 48009

Ara.d@residentsfirst.co

## VI.    Address for Further Correspondence
Matt Allen, Onsite Supervisor
OCDPH
12251 James ST
Holland, MI 49424
(616) 393-5664
mallen@miottawa.org


**Failure to comply with this Order may lead to misdemeanor charges, fines, or judicial follow-up.**


By Order of the Health Officer:

*Adeline Hambley*                                    Date: March 2, 2026

Adeline Hambley
Health Officer
Ottawa County Department of Public Health


Cc/att (via email): Sarah Matwiejczyk, Ottawa County Prosecutor

Doug Van Essen, Ottawa County Corporation Counsel

Spencer Ballard, OCDPH

Matt Allen, OCDPH

Mark Bennett, Tallmadge Charter Township

Andrew Brisbo, LARA

Christine Alexander, EGLE

Amanda StAmour, EGLE

Eric Oswald, EGLE

Brandon Onan, EGLE

Brian Thruston, EGLE

Kory Groetsch, MDHHS

| From: | Heather Moots |
|---|---|
| To: | Douglas Van Essen; Ara J. Darakjian |
| Cc: | Adeline Hambley; Sarah Matwiejczyk; Spencer Ballard; Matt Allen; Mark Bennett; Brisbo, Andrew (LARA); Alexander, Christine (EGLE); StAmour, Amanda (EGLE); Oswald, Eric (EGLE); Onan, Brandon (EGLE); Thurston, Brian (EGLE); Groetsch, Kory J. (DHHS) |
| Subject: | RE: OCDPH Imminent Danger Order & Corrective Actions Tallmadge Meadows MHC |
| Date: | Tuesday, February 24, 2026 9:51:58 AM |

---

**Caution!** This email is from an external address and has a compressed file attached. These files can contain a virus. Use caution when opening this file, or do not open this file at all if you did not expect to receive it.

---

Good Morning Doug and Team,

I spoke to Matt Allen yesterday to clarify a few items to prepare our plan. Below you will our plan of action for the community until the water issue is resolved. I will have that timeline of the repair after tomorrow and submitted to EGLE.

## OCDPH Imminent Danger Order & Corrective Actions
## Tallmadge Meadows – Compliance Plan

Per the requirements outlined in the OCDPH Imminent Danger Order and Corrective Actions, Tallmadge Meadows is implementing the following measures to ensure all residents have access to adequate and safe water and sanitation facilities.

### 1. Alternative Bathroom and Shower Facilities

- We have verified our current registered resident count. Including the few occupied homes on the opposite side of the community experiencing issues, we remain under 60 residents.
- One approved unit is already available for resident use.
- Two additional units have been identified and are being prepared:
    - **Unit #2** will be available **tomorrow.**
    - **Unit #3** is expected to be operational **by the end of the week.**
- I have spoken with Matt Allen, and we intend to schedule an inspection of these units **tomorrow** to allow immediate use upon approval.
- Facility access hours will be **8:00 AM–7:00 PM daily**, with **after-hours access available by reservation**.
- Each unit will have an **open/closed sign** for residents to indicate occupancy, and residents will be asked to **lock the door** while inside (standard residential door locks).
- **Cleaning and Monitoring:**
    - Staff will conduct **two-hour checks** during open hours to ensure cleanliness and functionality.
    - For after-hours reservations, staff will clean **after each use when possible** or **before 8:00 AM** the following day.

### 2. Portable Water Supply

Bottled water will continue to be available at the office for any resident who needs it.

- The community laundry room will remain open throughout the day to provide **bulk water access** for residents.
- Residents will also be able to use any available home for water.

### 3. Resident Communication Plan

- We will distribute the approved plan to residents via:
    - Email
    - Door-posted letters
    - Notices in central community locations
- Residents will receive **weekly updates**, or more frequently if conditions change or new information becomes available regarding this plan or the approved EGLE ACA plan.

Please let me know if you have any questions or need anything else, don't hesitate to reach out to me.

Thank you,

Heather Moots
District Operations Manager
Residents First
Phone 947-260-9040
heather.m@residentsfirst.co

**Residents First**
*217 Pierce St #209*
*Birmingham, MI 48009*

**EXHIBIT F**



STATE OF MICHIGAN
DEPARTMENT OF
ENVIRONMENT, GREAT LAKES, AND ENERGY
WATER RESOURCES DIVISION



**GRETCHEN WHITMER**
GOVERNOR

PHILLIP D. ROOS
DIRECTOR

March 11, 2026

**VIA EMAIL**                                                                    **SVN No. SVN-01906**

Ara Darakjian, Managing Member
Tallmadge Meadows MHC, LLC
Tallmadge II, LLC
217 Pierce Street, Suite 209
Birmingham, Michigan 48009

Dear Ara Darakjian:

SUBJECT:    Second Violation Notice (SVN) SVN No. SVN-01906
            Groundwater Discharge Permit No. GW1110234
            Designated Name: Tallmadge Meadows MHC

The Department of Environment, Great Lakes, and Energy (EGLE), Water Resources Division (WRD), Grand Rapids District Office (GRDO) issued Violation Notices (VNs), VN-012202 and VN-012674, on September 8, 2021, and February 2, 2022, respectively; Second Violation Notices (SVNs), SVN-01163 and SVN-01435 on March 4, 2022, and November 15, 2023, respectively, and Violation Notice and Enforcement Notice (VN/EN) EN-000135 on January 7, 2025, to Tallmadge Meadows MHC, LLC, the operator, and Tallmadge II, LLC, the property owner, for the Tallmadge Meadows MHC (Facility) located at 11630 14th Avenue NW, Grand Rapids, Michigan 49534, Ottawa County, in response to violations Part 31, Water Resources Protection, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended (NREPA), MCL 324.3101 *et seq.*; the Part 10, Treatment Plant Operators, administrative rules promulgated pursuant to Part 31, Mich Admin Code, R 323.1251 *et seq.* (Part 10 Rules); the Part 22, Groundwater Quality, administrative rules promulgated pursuant to Part 31, Mich Admin Code, R 323.2201 *et seq.* (Part 22 Rules); the Mobile Home Parks and Seasonal Mobile Home Parks Rules, administrative rules promulgated pursuant to the Mobile Home Commission Act, 1987 PA 96, as amended, MCL 124.2301 *et seq.*, Mich Admin Code, R 325.3311 *et seq.* (the MHP Rules); and Groundwater Discharge Permit No. GW1110234, issued September 29, 2017, effective October 1, 2017, and expired October 1, 2021 (Permit). Neither Tallmadge Meadows MHC, LLC nor Tallmadge II, LLC has returned to compliance with Part 31, the Part 22 Rules, or the MHP Rules or provided adequate responses to the previous VNs or SVNs. The previously issued VNs, SVNs and VN/EN are enclosed for reference.

Between December 14, 2023, and September 9, 2024, responses to SVN-01435 were submitted by Rebecca Page (Holland Engineering), Scott Pistorius (Residents First, LLC) Gerald Runnels (Residents First, LLC), Todd Shank (LTI Services Group), and Ryan Ysseldyke (Holland Engineering) on behalf of Tallmadge Meadows MHC, LLC:

- In response to Item 2, Gerald Runnels submitted a Standard Operating Procedure on December 15, 2023. The SOP was approved on December 18, 2023.

Tallmadge Meadows MHC   
Ara Darakjian

- 2 -

March 11, 2026

- In response to Item 3, Rebecca Page submitted an Engineering Work Plan on January 31, 2024. The Engineering Work Plan was approved on February 2, 2024.

- In response to Item 4, Ryan Ysseldyke submitted an Engineering Evaluation Report on August 30, 2024, and September 9, 2024. The Engineering Evaluation Report was incomplete and was not approved.

- In response to Item 5, Gerald Runnels submitted a report identifying past alteration or modifications to the wastewater systems that were made without WRD approval on December 15, 2023.

- In response to Item 6, Gerald Runnels submitted a wastewater flow reduction plan on February 15, 2024. With the February 18, 2024, approval notice, WRD requested a progress report detailing the actions taken and the result of the flow reduction plan. Tallmadge Meadows MHC, LLC has not provided a progress report.

- In response to Item 7, Todd Shank submitted a Standard Operating Procedure (SOP) for conducting, documenting, and submitting the required monitoring reports on December 15, 2023. The SOP was acknowledged by WRD on December 18, 2023.

- In response to Item 8, Todd Shank submitted the results of drawdown testing of the dosing pumps at the south system on December 13, 2023. Results of drawdown testing of the dosing pumps at the northeast system have not been provided.

- In response to Item 9, on December 14, 2023, Scott Pistorius provided records for septic tank pumping that occurred on December 11 and 14, 2020, and August 16 and 17, 2022. The records did not indicate which tanks were cleaned during these events. Tallmadge Meadows MHC, LLC did not respond to WRD's request for clarification.

- In response to Item 10, Rebecca Page submitted an Operation and Maintenance Manual on January 31, 2024. The Operation and Maintenance (O&M) Manual is missing required information.

- In response to Item 11 which requested the flow and observational monitoring records for 2022 and 2023, Todd Shank submitted flow averages for the south system for October 20, 2023, through December 2023. The 2022 Discharge Monitoring Report was due January 21, 2023, and was submitted on December 13, 2023.

The response is inadequate because the responses to Items 4, 6, 8, 9, 10 and 11 are incomplete.

Further, Tallmadge Meadows MHC, LLC is not operating in accordance with the approved Monitoring Standard Operating Procedure.

Tallmadge Meadows MHC, LLC has failed to report average daily flow calculated on a weekly basis. The 2022 Discharge Monitoring Report (DMR) was due January 21, 2023, and was submitted on December 13, 2023. The flows reported for 2022 appear to have been averaged on a monthly basis instead of on a weekly basis. The exception to this is November and December 2022 where one value was provided for each day in both months.

Tallmadge Meadows MHC                        - 3 -                        March 11, 2026
Ara Darakjian

The failure to monitor and record weekly flow was previously identified in SVN-01163, SVN-01435, and EN-000135.

Tallmadge Meadows MHC, LLC has failed to submit annual Discharge Monitoring Reports by the due date. WRD did not receive by the due date the annual DMRs for 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024 or 2025. The DMRs for 2018 and 2022 were received late. The DMRs for 2017, 2018, 2019, 2020, 2021, 2023, 2024 and 2025 have not been received. The failure to submit the annual Discharge Monitoring Report by the due date was previously identified in VN-012674, SVN-01435, SVN-01163 and EN-000135.

Tallmadge Meadows MHC, LLC has failed to conduct weekly observations of the drain fields. During a February 24, 2026, phone call, Todd Shank stated that he performs monthly inspections of the sewage treatment and disposal system. The failure to conduct and document weekly O&M inspections was previously identified in SVN-01435 and EN-000135.

## VIOLATION SUMMARY

The response to Item 8, of SVN-01435, Todd Shank stated that unsafe conditions prevented a drawdown test from being conducted. During the February 24, 2026, phone call with the WRD, Todd Shank stated that a drawdown test still has not been performed on the dosing pumps for the northeast system, because the unsafe conditions are ongoing.

On February 23, 2026, WRD conducted a reconnaissance inspection at the Facility. Amanda St. Amour and Emily Weller, both Environmental Quality Analysts of WRD, arrived unannounced to the site. The inspection occurred after a period of snow-melt and during a rain event. During the site visit, WRD observed holes in the south drain field and in the northeast drain field. The surface of both drain fields was spongy.

In accordance with R 325.3335(2) of the MHP Rules, "Sewerage Systems shall be operated and maintained at all times as efficiently as possible in a manner that precludes discharges of excessive pollutants, prevents the creation of a public health hazard or nuisance condition, and complies with all discharge permit limitations." The failure to properly operate and maintain the sewerage system is a violation of the MHP The failure to properly operate and maintain the sewerage system was previously identified in SVN-01435 and EN-000135.

Tallmadge II, LLC and Tallmadge Meadows MHC, LLC failed to reapply for a permit to discharge wastewater prior to the Permit expiration date. The discharge of wastewater to groundwater without a valid permit is in violation of Section 3112(1) of Part 31, MCL 324.3112(2), and Section 2205 of the Part 22 Rules, R323.2205(1).

The violations identified in this SVN are violations of Part 31, the Part 22 Rules, and the MHP Rules.

Unless noted above, the violations identified in this SVN are continuing.

Tallmadge Meadows MHC, LLC and Tallmadge II, LLC have not sufficiently resolved the violations listed in EN-000135. Tallmadge Meadows MHC, LLC and Tallmadge II, LLC should take immediate action to achieve and maintain compliance with the terms and conditions of, Part 31, the Part 22 Rules, and the MHP Rules.

Tallmadge Meadows MHC                                     - 4 -                                        March 11, 2026
Ara Darakjian

Please submit a written response to MiEnviro by **April 15, 2026.** A Schedule of Compliance titled "Respond to SVN" has been created for this purpose and will appear on the MiEnviro dashboard. At a minimum, the response shall include:

1.  A summary of the actions taken to restore the south and northeast drain fields to proper operating and maintenance conditions.

2.  A complete Engineering Evaluation Report that includes a basis of design, the results of the evaluation of the condition and capacity of the sewage collection, treatment and disposal systems, and recommendations. The Engineering Evaluation Report shall include a proposed schedule for the implementation of the recommended improvements, not to exceed 180 days after WRD approval of the Engineering Evaluation Report.

3.  A progress report detailing the actions taken in accordance with the approved Wastewater Flow Reduction Plan and the outcomes of those actions.

4.  A summary of the actions that will be taken to comply with the approved Standard Operating Procedure for conducting, documenting and submitting the required monitoring records, including monitoring the average daily wastewater effluent flow weekly, conducting the weekly O&M inspections, and submitting annual DMRs on or before the due date.

5.  A summary of the actions taken to restore safe operating conditions to the northeast system pump house and dosing chamber.

6.  The results of drawdown testing of all drain field dosing pumps that have not been tested in the last 12 months.

7.  The most recent records of the septic tank sludge depth testing and pumping records for both the south and the northeast systems. The records should include details about location of each septic tank that has been evaluated and pumped.

8.  A complete O&M Manual that meets all of the requirements of the Permit.

9.  An explanation about the failure to produce annual DMRs for 2023, 2024 and 2025.

If you have any additional facts you would like us to consider regarding the violations identified in this SVN, please provide them with your written response. A schedule of compliance titled, "Respond to SVN" has been created in MiEnviro specifically for this purpose and can be found in the Upcoming tab on your MiEnviro Portal Dashboard.

Compliance with the terms of this SVN does not relieve Tallmadge Meadows MHC, LLC or Tallmadge II, LLC of any liability, past or present, from the failure to meet the conditions specified in the Permit or comply with Part 31, the Part 22 Rules, the Part 10 Rules, or the MHP Rules.

The WRD reserves its right to take all necessary and appropriate enforcement actions for all violations observed to date and any violations that occur in the future. This may include civil action seeking fines, enforcement costs, injunctive relief and potential criminal prosecution.

Tallmadge Meadows MHC                - 5 -                    March 11, 2026
Ara Darakjian

As a reminder, this Facility has been referred to Escalated Enforcement via Enforcement Notice No. EN-000135.

We anticipate and appreciate your cooperation in resolving this matter Should you require further information, please contact Amanda St. Amour, Senior Environmental Quality Analyst, at 616-401-9913; StAmourA@Michigan.gov; or at EGLE, GRDO, WRD, P.O. Box 30458, Lansing, Michigan 48909-7958.

Sincerely,

Michael J. Worm, District Supervisor
Grand Rapids District Office
Water Resources Division – EGLE
616-350-3395

mjw/as/llr

Attachments

cc:     Adeline Hambley, Ottawa County Department of Public Health
        Kory Groetsch, DHHS
        Mark Bennett, Tallmadge Township
        Brandon Onan, EGLE
        Andrew Brisbo, LARA
        Department of Licensing and Regulatory Affairs
        Christine Alexander, EGLE
        Kristine Rendon, EGLE
        Susan Doty, EGLE
        Det. Daniel Lee, EGLE
        Amanda St. Amour, EGLE